Steven **STEELE**, Plaintiff–Appellant,

v.

Han Chul **CHOI**, Defendant–Appellee.

No. 95–2249.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1995.

Decided April 29, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied May 30, 1996.

Hamid R. Kashani, Indianapolis, IN and Richard S. Van Rheenen, Van Rheenen & Associates, Indianapolis, IN, for Plaintiff–Appellant.

David A. Arthur, Office of the Attorney General, Indianapolis, IN, for Defendant–Appellee.

Before KANNE and DIANE P. WOOD, Circuit Judges, and SKINNER, District Judge.*

DIANE P. WOOD, Circuit Judge.

Steven Steele, a prisoner at the Indiana Reformatory, brought this action under 42 U.S.C. § 1983 against Dr. Han Chul Choi, one of the prison doctors, claiming that Dr. Choi violated Steele's rights under the Eighth Amendment as a result of Dr. Choi's allegedly incompetent medical treatment of Steele. The district court granted Dr. Choi's motion for summary judgment. Because that court correctly recognized that not every instance of poor medical treatment amounts to a federal constitutional violation, and that Steele failed to meet the standards

* The Honorable Walter Jay Skinner, Judge, United States District Court for the District of Massa-    chusetts, sitting by designation.

set forth in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and *Farmer v. Brennan,* 511 U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), we affirm.

## I

As the district court put it, at all times relevant to this case Steven Steele was "being reformed" at the Indiana Reformatory in Pendleton, Indiana. He had a number of medical problems, including high blood pressure, that caused him to pay frequent visits to the prison infirmary. On the evening of January 10, 1991, at 8:15 p.m., Steele became ill, experiencing among other symptoms projectile vomiting and a severe headache. He was taken to the prison infirmary, where his condition worsened. He was pale, sweating profusely, shaking violently, and breathing rapidly; after another episode of vomiting, his eyes began to roll back in his head. He then began to have trouble breathing, for which he was given an oxygen mask. The infirmary staff suspected that Steele had overdosed on Percocet, which was noted on his chart, but they took no steps to verify this. Steele denied that his problems were drug-related.

Later in the evening, Steele was transferred to St. John's Hospital, in Anderson, Indiana, where he was also diagnosed as experiencing the effects of an overdose of Percocet. Because Percocet is composed of acetaminophen and oxycodone, a patient who overdosed on Percocet would register a high level of acetaminophen. The medical staff accordingly ordered blood tests for acetaminophen, but the results were negative. The St. John's doctors gave Steele two medications to combat his symptoms and within a few hours transferred him to a second hospital, Wishard Hospital in Indianapolis. The doctors at Wishard concurred in the Percocet overdose diagnosis, despite the fact that they could find no needle marks on Steele's body and their acetaminophen test was also negative. Around 5:00 a.m. on January 11, Steele was returned to the Reformatory infirmary, where the staff observed that he was lethargic and slurring his speech.

Dr. Choi first saw Steele at 9:00 a.m. on January 11, in the infirmary. After a brief examination, Dr. Choi took several steps: he referred Steele to the prison psychologist, he prescribed a drug for Steele's symptoms, and he ordered a few tests. Over the next few days, Steele's condition did not improve. He continued to suffer from headaches, nausea, and lethargy. Dr. Choi saw Steele several more times, but he did not order any additional tests. On January 14, Dr. Choi ordered Tigan (an anti-nausea drug) for Steele.

Early on January 15, Steele's condition worsened significantly. He was non-responsive, sweating profusely, and had dangerously high blood pressure (250/190). He complained of neck pain on his left side and numbness in his left leg. The Reformatory officials transferred him to St. John's again. There he was diagnosed as having a subarachnoid hemorrhage (internal bleeding of the brain). St. John's sent Steele to Wishard, and Wishard surgeons operated to clip a ruptured aneurysm. As a consequence of all this, Steele suffered considerably. He has some paralysis on the right side, he lost most of his ambulatory functions, he has severe spasms in his right hand, and his head was disfigured due to the removal of some of the skull bones from one of his temples. He is also in constant pain.

As a result of these events, Steele filed this action on January 13, 1993, under 42 U.S.C. § 1983 against Dr. Choi, an employee of the Indiana Reformatory, claiming that Dr. Choi "knowingly, or at least recklessly, disregarded a substantial risk of serious harm" to Steele and thereby violated Steele's Eighth Amendment rights. Finding that Steele did not present enough evidence to create a genuine issue of material fact on the question whether Dr. Choi's treatment was deliberately indifferent, the district court granted Dr. Choi's motion for summary judgment on March 2, 1995. The court then denied Steele's motion under Fed.R.Civ.P. 59(e) to alter or amend the judgment, and this appeal followed.

## II

In his brief on appeal, Steele devotes considerable attention to the likelihood that Dr. Choi misdiagnosed his condition during the

period between January 11, 1991, and his surgery on January 15, 1991. He claims that his admitted symptoms were so obviously indicative of the subarachnoid hemorrhage that Dr. Choi must have known this was the problem, and thus Dr. Choi's failure to take any steps to order a medical workup for Steele to confirm the diagnosis amounted to deliberate indifference to a serious medical need. Steele concedes that the legal standards of *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976), and *Farmer v. Brennan*, 511 U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), control this case, but he claims that they were met.

■ The basic flaw in Steele's argument is its failure to follow the subjective test for an Eighth Amendment violation that the Supreme Court established in *Farmer*. The Court there held that

a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

—— U.S. at ——, 114 S.Ct. at 1979. This, the Court stressed repeatedly, is a subjective test. At the very least, the official must act or fail to act "despite his knowledge of a substantial risk of serious harm." *Id.* at ——, 114 S.Ct. at 1981. In some cases, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious," *id.*, although the inference may not be conclusive because "people are not always conscious of what reasonable people would be conscious of." *Id.* (quoting 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.7 (1986)).

■ In the case of Eighth Amendment claims based upon inadequate prison medical care, *Estelle* requires us to distinguish between "deliberate indifference to serious medical needs" of prisoners, on the one hand, and "negligen[ce] in diagnosing or treating a medical condition," on the other. 429 U.S. at 106, 97 S.Ct. at 292. Only the former vio-

lates the Cruel and Unusual Punishment Clause. *Farmer*, —— U.S. at ——, 114 S.Ct. at 1978; *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir.1994) ("medical malpractice that consists of negligent treatment is not cruel and unusual punishment"); cf. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (applying the *Estelle* deliberate indifference standard generally to prisoner challenges to conditions of confinement). This Court recently addressed the distinction between "negligent treatment" and "deliberate indifference" in *Williams v. O'Leary*, 55 F.3d 320 (7th Cir.1995). Williams alleged Eighth Amendment violations arising from his medical treatment obtained at both the Joliet and Stateville Correctional Centers. A medical officer's failure to administer an appropriate antibiotic to treat his osteomyelitis had led to bone decay, which required surgical correction. This Court rejected Williams' argument that "it would have been obvious to a doctor in the defendants' positions that their actions amounted to a constitutional violation" and concluded that even if the medical officer's actions were "below the standard of care for the treatment of osteomyelitis," merely negligent care would not rise to the level of an Eighth Amendment violation. *Id.* at 324.

■ Applying these standards, the question for us is whether Steele presented enough evidence to create a genuine issue of fact about (1) Dr. Choi's knowledge of the serious medical risk he faced, and (2) Dr. Choi's deliberate indifference to that risk. In fact, Steele's evidence showed rather clearly that Dr. Choi did not know that Steele was suffering from a subarachnoid hemorrhage, but instead that the doctor thought he had overdosed on drugs. The evidence further shows that two different sets of doctors, the St. John's staff and the Wishard staff, also initially made the drug overdose diagnosis. Steele argues that the district court should not have considered the views of the outside hospital doctors because they were "clearly wrong" and they did not have as much opportunity to observe him as Dr. Choi did over the days following the initial incident. This evidence was important, however, on the question whether the very obviousness of Steele's medical problem

might be enough to show knowledge on Dr. Choi's part. If two sets of outside doctors could draw the same (erroneous) conclusion, it is difficult at best to claim that another diagnosis was "obvious."

 Since it is plain that Dr. Choi did not actually know what was wrong with Steele, nor does any evidence indicate he even had knowledge of a substantial risk that Steele was suffering from a subarachnoid hemorrhage, the only way in which this case could go forward would be if this were one of the cases in which "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer,* — U.S. at —, 114 S.Ct. at 1981. Recognizing this, Steele's argument boils down to the proposition that a minimally competent doctor, looking at the symptoms Dr. Choi saw, would have known that subarachnoid hemorrhage was possible and would therefore have ordered the necessary tests to confirm the diagnosis. The problem is that this approach, looking as it does to the "reasonable doctor," is an objective test, not a subjective one. *Farmer,* however, explicitly adopts a subjective test, and it makes no exceptions for medical treatment cases. Furthermore, the Supreme Court's holding in *Estelle* that the Eighth Amendment does not constitutionalize medical malpractice implies that there will be cases in which treatment falls below acceptable standards that do not state a claim for constitutional purposes. This Court's *Williams* decision was such a case.

In this case, Steele's evidence showing that some medical experts were of the view after the fact that a doctor should have ordered the tests, or that Steele's symptoms were "strong and obvious evidence" that the problem was not a drug overdose, is not enough to raise an inference that Dr. Choi himself was aware of the risks that Steele faced. There is no evidence here tending to suggest that Steele's symptoms were consistent *only* with subarachnoid hemorrhage, and there is certainly no evidence that Dr. Choi was ignoring Steele's needs. If the symptoms plainly called for a particular medical treatment—the leg is broken, so it must be set; the person is not breathing, so CPR must be administered—a doctor's deliberate decision not to furnish the treatment might be action-

able under § 1983. If Steele's chart had page after page documenting a heart condition, and he came in with a set of symptoms consistent with heart attack, it is possible that the *Farmer* standard might be met. Here, we lack any such evidence. Dr. Choi may have been careless in not appreciating that he should investigate several possible explanations for Steele's symptoms, and it is possible (though we make no finding on the point) that he committed medical malpractice. But nothing in *Farmer* casts any doubt on the Court's earlier ruling in *Estelle* that malpractice just isn't enough, and we see nothing more than that in this case.

### III

Like the district court, we are not without sympathy for Steele's plight. With the benefit of hindsight, it is clear that Dr. Choi did not take the right steps, and Steele has suffered and will continue to suffer the consequences. Nonetheless, we agree with the district court that there is no evidence in this record that shows that Dr. Choi—as a subjective matter—was deliberately indifferent to Steele's medical needs, applying the *Farmer* standard to an Eighth Amendment claim based upon a failure to give needed medical treatment.

We therefore AFFIRM the judgment of the district court.