Diane P. Wood, Circuit Judge,
concurring in part and dissenting in part.
I agree that the district court correctly dismissed Brian Zentmyer’s § 1983 action with respect to all of the defendants except Deputy Chris Pfister. With respect to him, however, I find disputed issues of fact that require this case to proceed to trial. I therefore dissent with respect to the disposition of that single claim.
Construing the record in favor of Zent-myer, as we must on this review of summary judgment, I agree with the majority that Zentmyer raised a material question of fact as to whether he suffered a serious medical need. Two doctors, Dr. Gaddam and Dr. Kramer, testified that Zentmyer’s ear infection could cause permanent hearing loss if improperly treated. Both doctors also offered the medical opinion that antibiotics must be administered on time *813 to be effective (Dr. Gaddam stated specifically that the medication had to be given within two hours of the prescribed time).
The next question, as the majority notes, is whether Zentmyer raised a material issue of fact with respect to the deliberate indifference of any or all of the defendants. Here I part company with them. It is true that it will not be easy for Zentmyer to convince a trier of fact that Deputy Pfister displayed deliberate indifference to his serious medical need. He will have to prove that Pfister was aware that substantial harm could result from failing to administer the medication correctly, and that he then purposefully did not give it to Zentmyer according to schedule. See Steele v. Choi, 82 F.3d 175, 178 (7th Cir.1996) (internal citations omitted). What Zentmyer does not have to do is produce a direct admission of deliberate indifference from Pfister. As is true for everything else in the case, circumstantial evidence may also be used to prove that the defendant was aware of the substantial risk to Zentmyer’s health and deliberately disregarded that risk. See Vance v. Peters, 97 F.3d 987, 992 (7th Cir.1996).
Zentmyer offered evidence that Pfister knew that on April 22, 1995, Dr. Gaddam prescribed antibiotics which Zentmyer was to take three times daily (Amoxicillin) and four times daily (Otoeort). Jail records show clearly that the officials did not administer the medication according to the prescription. Zentmyer also offered evidence that the deputies (including Pfister) knew that as of May 5, 1995, the infection had not cleared up, because that was when Dr. Trevino prescribed Biaxin and Elocon cream to be administered twice daily, and this prescription too appeared on jail records. Again, despite the fact that this was the second go-round of antibiotic treatment, the medications were not administered correctly. Pfister, when questioned about his treatment of Zentmyer, said that it was his policy to treat inmates as well as they treated him, and that Zentmyer did not treat him too well. Pfister then added that “[Zentmyer] received a lot of medication. I have a grandmother. I don’t think she’s taken this much medication.”
It is true that a jury would be entitled to find, based on this evidence, that “[t]he deputies’ failure to dispense Zentmyer’s medication consistently on schedule does not manifest conscious disregard for Zent-myer’s health.” Ante at 811. We may not, however, resolve that question of material fact at the summary judgment stage. This is not a cut and dried situation, where a record of perfectly good treatment was followed by a few isolated occurrences of neglect. See Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir.1997). The record shows that Zentmyer’s medication was distributed arbitrarily from the beginning of his treatment. This is also not a case devoid of evidence that Pfister was aware of the risks posed by lack of treatment. Two doctors prescribed antibiotics for Zent-myer. Zentmyer continuously complained of pain, and of not receiving his medication at the prescribed times. Pfister admitted to what a reasonable person might construe as a motive to ignore Zentmyer’s plight, since he apparently viewed Zent-myer as a hypochondriac and had resolved to engage in some kind of tit-for-tat treatment of Zentmyer (i.e. Zentmyer behaved badly to him, and so he would behave badly to Zentmyer). In the face of this evidence, the fact that Pfister never noticed effusive bleeding or pus in Zent-myer’s ear is not conclusive on the question of deliberate indifference. HIV, heart disease, and many other ailments are often not visible to the human eye, and it was not up to Pfister or any other deputy to second-guess the doctors’ decisions about prescription medicine.
These disputed issues of fact are enough to allow Zentmyer’s claim against Pfister to go forward. I respectfully dissent with respect to the disposition of that claim, and I concur in the remainder of the court’s opinion.