In the
United States Court of Appeals
For the Seventh Circuit

No. 97-4058

CLARA WALKER,

Plaintiff-Appellant,

v.

HOWARD PETERS, SALVADOR GODINEZ,
RICHARD GRAMLEY, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 93 C 5831--James B. Moran, Judge.

Argued December 10, 1999--Decided November 30, 2000

Before EASTERBROOK, ROVNER and DIANE P. WOOD, Circuit
Judges.

ROVNER, Circuit Judge.  Dwayne Walker was a
prisoner who suffered from a variety of serious
illnesses. He sued a number of prison officials
and doctors for violating his Eighth Amendment
right to be free from cruel and unusual
punishment, claiming these various individuals
were deliberately indifferent to his serious
medical needs. The district court granted summary
judgment in favor of the defendants, finding
that, at most, Walker's complaints amounted to a
malpractice action and not a constitutional
deprivation. We affirm.

I.

Dwayne Walker suffered from hemophilia,
avascular necrosis of his right hip, arthritis,
retinoschisis, a partially fused right ankle, a
partially fused left elbow, a pinched nerve in
his back, and AIDS. He suffered from mental
problems as well, including anti-social
personality disorder. He was incarcerated by the
Illinois Department of Corrections ("IDOC") from
June 1984 until his death in August 1999./1
Because of his hemophilia, Walker required
infusions of a substance known as "Factor VIII,"
a clotting protein that occurs naturally in the
blood of persons who do not suffer from
hemophilia. Factor VIII, marketed under the trade
name "Factorate," is a concentrate derived from

donor blood. In the early 1980s, donor blood was not yet tested for the presence of HIV, and consequently, a large percentage of hemophiliacs contracted HIV and, subsequently, AIDS, as a result of taking Factor VIII. The defendants do not dispute Walker's statement that 90% of hemophiliacs taking Factor VIII during this time period eventually contracted AIDS.

Walker exhibited a number of symptoms consistent with HIV infection and AIDS from the beginning of his incarceration. In particular, he exhibited generalized lymphadenopathy and an inverted T-4 helper cell/T-8 suppressor cell ratio, and these symptoms were noted in medical records transferred to the prison within a few months of the date of his incarceration. Because he was in a high risk group for contracting AIDS, and because he exhibited these symptoms, certain prison doctors assumed Walker was HIV positive, or strongly suspected that he had HIV infection and/or AIDS. One of the prison doctors noted in Walker's record that he "received so much Factor VIII [that he is] assumed to be HIV positive." Another health summary in Walker's prison records indicated that Walker was at high risk for AIDS because of his hemophilia, and another indicated that he had repeatedly refused to take a blood test to confirm or rule out HIV infection. Walker does not deny that he refused to take the confirmatory blood test, but explained that the results would have stigmatized him in prison.

Although he exhibited these symptoms and fell into this high risk group, and although some prison officials and physicians assumed he was HIV positive, Walker received no treatment for this condition until 1993. The parties agree that the appropriate treatment for a person infected with HIV and possibly suffering from AIDS was AZT, an anti-viral drug that became generally available in 1987, and Bactrim, a widely available antibiotic that is effective in preventing certain opportunistic infections associated with AIDS. The defendants contend that they did not prescribe these medications for Walker because he would not take the confirmatory test. It would have been malpractice, they maintain, to administer the potent and dangerous drug AZT without confirmation that Walker was in fact HIV positive. They maintain that they were merely following the Centers for Disease Control ("CDC") criteria when they required a positive HIV test before prescribing AZT. Walker contends they did not provide the proper treatment for more sinister reasons. He argues that the CDC guidelines did not require a positive HIV test for an AIDS diagnosis beginning in 1987. He also points to the IDOC AIDS Manual, which he claims allows AZT treatment for inmates with a CD4 count

below 300, whether or not HIV infection has been confirmed. Moreover, upon his transfer to another prison in the Illinois system in late 1993, he began receiving AZT and Bactrim even though he continued to refuse to take the confirmatory HIV test. Finally, Walker maintains that if the HIV test was required before treatment, the defendants could have forced him, under Illinois law, to take the test at any time. The defendants are not allowed, Walker argues, to avoid learning the true nature of his condition once they have reason to believe he is seriously ill.

Walker's treatment for hemophilia also proved to be troublesome. Construing the facts in favor of Walker as we must on summary judgment, hemophiliacs are able to sense their need for Factor VIII, and should be infused with the substance when they ask for it. Apparently hemophiliacs can learn to recognize the signs that they are having an internal bleed, and that clotting factor is needed. Factor VIII should be infused as soon as possible after the patient senses the need. The consequences for an untreated bleed can be severe and permanent. Untreated bleeds in joints can lead to extreme pain and limitation of the movement of that joint in the future. A delay of even an hour can have dire consequences. Walker states that on many occasions when he requested Factor VIII, prison officials refused to give it to him. Other times, he was offered Factor VIII which had been improperly prepared, and he refused to take it. The defendants counter that Walker was an unreliable indicator of his need for Factor VIII, that he often asked for it when he did not need it, and that he then refused to take it without good reason after it had been mixed. Because the substance must be discarded three hours after it is prepared, Walker's refusals led to repeated spoilage of the expensive substance. Rather than preparing the substance every time Walker requested it, a prison doctor would examine him and determine whether Walker actually needed the Factor VIII before dispensing it. The defendants claim that Walker was not harmed by this policy and that his own actions made appropriate treatment nearly impossible.

Walker sued a number of prison officials and doctors for deliberate indifference to his serious medical needs, in violation of the Eighth Amendment proscription against cruel and unusual punishment. Count I of his complaint alleged that the defendants failed to take the medically necessary steps to determine whether he was infected with HIV or whether he had AIDS, that they failed to timely inform him of his HIV or AIDS status, and that they failed to treat him for HIV infection and AIDS. Count II alleged that

the defendants failed to provide Walker appropriate treatment for his hemophilia by routinely refusing to give him Factor VIII, and by not informing non-medical prison staff of the greater risk of physical injury to Walker inherent in his hemophilia. Walker also complains in Count II that the defendants failed to provide adequate pain management for his hemophilia and that even when they began treating him for AIDS, the treatment was not medically appropriate.

The defendants moved for summary judgment and the district court granted judgment in favor of the defendants on both counts. The court found that the defendants' failure to treat Walker for HIV or AIDS could not constitute deliberate indifference because Walker could have obtained treatment by agreeing to the HIV confirmatory test. The court also held that a refusal to provide AZT without a confirmatory test was a matter of medical judgment, and that action based on medical judgment could never rise to the level of a constitutional violation. The court found that, contrary to Walker's claim, Illinois law did not give the defendants authority to test Walker for HIV against his will unless he had otherwise consented to treatment. Because the record was replete with Walker's refusal to consent to treatment in a variety of contexts, and because he had expressly refused to consent to the HIV test, the district court held that Illinois law did not grant authority to the defendants to test Walker for HIV against his will. As for Walker's complaint that the defendants sometimes refused to give him Factor VIII when he requested it, the court found that requiring clinical observation before dispensing Factor VIII could not constitute deliberate indifference because it was, once again, action based on medical judgment. Finally, the court granted summary judgment in favor of the non-medical defendants because Walker could not demonstrate that they were personally responsible for any decisions regarding his medical care. The court therefore granted summary judgment in favor of all of the defendants and against Walker on Counts I and II. Walker appeals.

II.

On appeal, Walker contends that the defendants were deliberately indifferent to his serious medical needs because they failed to take the medically necessary steps to determine whether he was HIV positive or had AIDS, failed to timely inform him of his HIV or AIDS status, and failed to timely provide the medical treatment necessary for a person with HIV disease or AIDS. He also maintains that the defendants were deliberately indifferent to his serious medical needs when

they routinely failed to provide appropriate treatment for his hemophilia. Finally, he argues that even when the defendants did begin to treat him for AIDS, they did not provide treatment in a medically appropriate manner.

The defendants contend that Walker's refusal to cooperate in his own diagnosis is fatal to his claim of deliberate indifference in the diagnosis and treatment of HIV infection and AIDS. Similarly, in the treatment of his hemophilia, the defendants maintain that Walker's repeated wasting of Factor VIII led the prison officials to refuse to provide the substance to him on demand. Moreover, the defendants claim that Walker cannot show that he was damaged by any of the refusals to give him Factor VIII on any particular occasion. Finally, the non-medical defendants contend that Walker cannot demonstrate that they were aware of his medical conditions or treatment much less that they were involved in the decision-making. Without personal involvement, the non-medical defendants claim they cannot be held liable under 42 U.S.C. sec. 1983.

A.

We turn first to the standard for deliberate indifference. In a case involving an attack on a prisoner by other inmates, the Supreme Court set forth the following definition:

We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). The Court further explained that an inmate need not show that a prison official acted or failed to act believing that harm would actually befall the inmate; rather it is enough for the inmate to show that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. 511 U.S. at 842. Moreover, whether a prison official had the requisite knowledge of a substantial risk is a fact question that could be demonstrated by drawing an inference from circumstantial evidence. For example, a fact

finder could conclude that the official was aware of the substantial risk from the very fact that the risk was obvious. Id.

As we noted above, Farmer was a case in which a prisoner was assaulted by other inmates, and we subsequently expanded on the theme of obviousness in the medical treatment context. We first noted that people are not always conscious of what reasonable people would be conscious of. Steele v. Choi, 82 F.3d 175, 178 (7th Cir. 1996), cert. denied, 519 U.S. 897 (1996). We do not consider what a reasonable doctor would have done. That is an objective test, and Farmer dictated a subjective analysis. 82 F.2d at 179. Nor is it enough to show that a prison doctor committed malpractice. At the very least, a prison official must act or fail to act despite his knowledge of a substantial risk of serious harm. 82 F.3d at 178. Thus, in Choi, we noted that where there was no evidence that the inmate's symptoms were consistent only with a single diagnosis, and where there is no evidence that the doctor was ignoring the inmate's medical needs, it is not enough to show that a reasonable doctor would have made the correct diagnosis and treatment. 82 F.3d at 179. "If the symptoms plainly called for a particular medical treatment--the leg is broken, so it must be set; the person is not breathing so CPR must be administered--a doctor's deliberate decision not to furnish the treatment might be actionable under sec. 1983." Id. A doctor might be careless in not appreciating the need to investigate several possible explanations for a particular prisoner's symptoms, and this carelessness may constitute malpractice. But malpractice alone is not enough to meet the constitutional standard. Id.

Walker believes that his symptoms were obvious and plainly called for a particular medical treatment. Walker's generalized lymphadenopathy and inverted T4 helper cell/T8 suppressor cell ratio, together with his hemophilia at a time when hemophiliacs were contracting HIV at an alarming rate all led a number of doctors to strongly suspect, even assume, that he was HIV positive. Indeed, a notation on his medical records indicates that he had received so much Factor VIII that he was presumed to be HIV positive. The defendants agree that they strongly suspected Walker was HIV positive and had contracted AIDS. Thus, Walker presented enough evidence from which an inference could be drawn that at least some of the defendants knew of a substantial risk of serious harm. The question remains, however, whether Walker has any evidence that the defendants' response to this knowledge was inadequate. Under Farmer, prison officials who are aware of a substantial risk of serious

harm may not be held liable if they responded reasonably to the risk, even if the harm was not ultimately averted. 511 U.S. at 844; Reed v. McBride, 178 F.3d 849, 854 (7th Cir. 1999) ("[t]he remaining question is whether the defendants' response can be characterized either as inaction or woefully inadequate.").

Everyone agrees that the defendants refused to treat Walker unless and until he took a confirmatory HIV test. They disagree on the reason why prison officials insisted on this step, and on the reason why Walker refused to submit to the blood test. Even Walker does not deny that at any point, he could have received a confirmatory blood test, and if found positive, would have been treated with AZT and Bactrim. Walker argues that neither prison policy nor medical standards at the time required a positive HIV test before treatment could begin, and that even if the HIV test was the only barrier to obtaining treatment, the defendants could have, indeed should have, forced him to undergo the test. Walker points out that prison officials had forced treatment on him in the past, requiring him to take psychotropic medications. Walker objected to that treatment, and sued prison officials there for violating his Eighth Amendment rights. See Walker v. Shansky, 28 F.3d 666 (7th Cir. 1994). He points also to the Illinois AIDS Confidentiality Act, which provides, in relevant part, that written informed consent to the HIV test is not required where, in the judgment of the physician, the testing is medically indicated to provide appropriate diagnosis and treatment, provided that the subject of the test has otherwise consented to medical treatment. See 410 ILCS 305/8. Although the defendants disagree on the applicability of this section, we will assume, in this summary judgment context, that prison officials could have forced Walker to undergo an HIV test, and knew that they had the legal authority to do so.

That does not answer the question, however. The question is whether a reasonable jury could find that prison officials were deliberately indifferent to Walker's serious medical needs because they required the HIV test as a prerequisite to treatment and then did not force him to take it. Walker claims that officials are now hiding behind the test as the reason for their inaction when in fact no such test was ever really required before treatment could be dispensed. His evidence for this proposition is thin. Although CDC criteria for counting AIDS cases at that time did not include a requirement of a positive HIV blood test, Walker has no evidence that CDC criteria for treating (as opposed to simply counting) AIDS patients did not

include a requirement for an HIV positive blood test before AZT could be dispensed. Walker also presents a 1989 memorandum from Dr. Ronald Shansky, a defendant in this case, to all medical directors and physicians in the Illinois Department of Corrections. That memo, which has a subject line of "Treatment of HIV Infection," states, in relevant part:

All individuals, whether confirmed with the diagnosis of AIDS or ARC or with asymptomatic HIV infection (T4 counts below 300), should be given the same dose of AZT--that dose being 600 mg per day. . . . All confirmed cases of AIDS should be on this dose. In addition, I am recommending that all individuals who have T4 counts of less than 300 and whose T4 cells are less than 20 percent of the total T-cells be started on this dosage.

Walker cites this memo as evidence that no HIV blood test was necessary as of 1989 in order to begin treatment with AZT. Rather, all that was needed was a T4 cell count of less than 300, which prison doctors knew he had. Walker's reading of the memo is strained past the limits of reasonableness. His best evidence that requiring an HIV test was simply a ploy to deny him treatment is that as soon as he was transferred to another prison within the same system, and subject to the same policies, he was given AZT without taking an HIV test.

This, however, is merely evidence that, in another physician's judgment, treatment could begin in some cases without an HIV blood test. Even so, requiring an HIV test before dispensing a dangerous drug used to treat HIV positive persons and persons with AIDS is so clearly within the realm of reasonable conduct by the prison that no reasonable jury could find that the prison was deliberately indifferent to Walker's serious medical needs for requiring that test, even though he had many of the symptoms of the disease. Like the plaintiff in Choi, there is no evidence tending to suggest that Walker's symptoms were consistent only with AIDS or HIV infection, and there is no evidence that the prison was ignoring Walker's needs. Rather, they required him to take a test confirming what they suspected to be the case before they would begin treatment. Nor are we persuaded by the fact that the prison officials chose not to force the needed test on Walker. Walker does not claim to be incompetent or to have displayed any signs of an inability to make medical decisions for himself. As a competent adult, he was free to refuse treatment. Here he impliedly refused treatment by refusing to take the one test he knew would lead to a confirmed diagnosis and treatment with AZT. If there had been any

evidence that the defendants were aware he was mentally ill and incompetent to make his own medical decisions, or perhaps suffering from AIDS-related dementia, for example, this might well be a different case. Without evidence of incompetence, no reasonable jury could find the defendants were deliberately indifferent to Walker's serious medical needs simply because they required an HIV confirmatory test before dispensing a powerful and dangerous drug. The district court correctly granted summary judgment in favor of the defendants.

B.

We turn next to Walker's claim that the defendants were deliberately indifferent to his serious medical needs by routinely refusing to give him Factor VIII on demand, and by giving him inadequate treatment for AIDS once they did begin to treat him for that condition. In particular, he complains that the prison officials did not provide adequate nutrition, exercise, living conditions or psychological counseling for a person with AIDS, and that prison staff were not properly trained on how to handle a person with hemophilia. His complaints relating to his treatment for AIDS and his handling as a hemophiliac are not supported by any evidence in the record other than his own personal opinion given in deposition testimony. No medical testimony supports the proposition that his treatment for AIDS was inadequate once the prison officials began to treat him. Nor does he cite any medical evidence in the record that he was mishandled as a hemophiliac. No reasonable jury could conclude based on his personal testimony that his medical treatment was inadequate without any competent evidence in the record to support these claims. The district court therefore correctly entered summary judgment on those claims.

Walker's complaint about the administration of Factor VIII is a closer call. Some of the prison doctors agreed that hemophiliacs in general can learn to recognize the signs of an internal bleed and that they should be administered Factor VIII on demand when they request it. Walker does not dispute that he sometimes requested Factor VIII and then refused to take it because he believed it had been prepared improperly. Because the substance can be used for only a few hours after it is prepared, his refusals resulted in the wasting of Factor VIII on occasion. Prison officials have a different explanation for why Walker refused to take Factor VIII after requesting it. According to them, Walker often requested narcotic pain medication at the same time and refused to take the Factor VIII unless

he was also given the pain medication, even when doctors believed the pain medication was not needed. On summary judgment, we will give Walker the benefit of the doubt and assume that he refused to take Factor VIII because he thought it had been improperly prepared. There is no evidence in the record that it had, in fact, been improperly prepared but we will assume Walker had a good faith belief that it had been. That still left the prison in the position of having to decide whether to prepare Factor VIII every time Walker requested it. Some doctors gave Walker Factor VIII on demand, and others decided to examine him to determine if he needed it before preparing it and potentially wasting it. There was clearly a difference of medical opinion on how to treat Walker's hemophilia, but there is no evidence that the prison officials were deliberately indifferent to Walker's condition. We examine the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs. See Reed, 178 F.3d at 855. Viewing the totality of the care Walker received for his hemophilia, isolated incidents of delay or even refusals to administer Factor VIII after clinical determinations that none was needed cannot be construed to be deliberate indifference.

The decisive factor, however, is that Walker has no evidence that he was injured by the defendants' refusal on some occasions to provide him Factor VIII. Although it is true that the defendants admitted that a hemophiliac could be harmed by delays or refusals in providing Factor VIII, there is no evidence that Walker actually was harmed by these decisions. In support of this alleged harm, he cites the deposition of his hematologist. She states that Walker's inability to walk could be the result of untreated joint bleeds, or could be the result of muscle weakness from lack of use. Because she is speculating as to the cause of his difficulties, nothing in her testimony supports Walker's claim that he was actually injured by the occasional refusals to infuse him with Factor VIII when he requested it. Because he cannot show injury, he cannot make out a claim of deliberate indifference relating to his treatment as a hemophiliac. The district court was correct to grant summary judgment on that claim as well.

III.

Because Walker refused to take a reasonably requested confirmatory test that would have led to appropriate treatment, we conclude that he cannot make out a claim for deliberate indifference to his serious medical needs. Likewise, we affirm the grant of summary judgment

on his claim of inappropriate treatment for hemophilia because he cannot show that he was injured by the defendants' policies or practices. Finally, we affirm summary judgment in favor of the defendants on Walker's remaining claims because there is no competent evidence in the record to support claims that he was not treated appropriately once prison officials did begin treating him for AIDS.

AFFIRMED.

FOOTNOTES

/1 Dwayne Walker died while this appeal was pending. By order of this Court, his mother, Clara Walker, was allowed to substitute as plaintiff. When we refer herein to "Walker," we are referring to Dwayne Walker.