In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2674

TYRONE PETTIES,

*Plaintiff-Appellant*,

*v.*

IMHOTEP CARTER and SALEH OBAISI,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 9353 — **George M. Marovich**, *Judge*.

ARGUED APRIL 28, 2015 — DECIDED JULY 30, 2015

Before FLAUM, KANNE, and WILLIAMS, *Circuit Judges*.

PER CURIAM. Tyrone Petties, an Illinois prisoner, claims in
this suit under 42 U.S.C. § 1983 that successive medical di-
rectors at Stateville Correctional Center violated the Eighth
Amendment by failing to provide adequate medical care for
his torn Achilles tendon. Petties appeals the district court's
grant of summary judgment for the doctors. We conclude
that, on this record, a jury could not reasonably find that the

doctors' treatment of Petties's ankle rose to the level of a constitutional violation, and we affirm.

**Background**

In January 2012 Petties was climbing stairs when he felt a sudden "pop" and extreme pain in his left ankle. He went immediately to the prison infirmary, where the examining physician noted tenderness and abnormal reflex in the left Achilles tendon and observed that Petties could not bear weight on that ankle. The physician, who is not a defendant in this suit, prescribed Vicodin and crutches. He also authorized a week of "meals lay-in" so that Petties could eat in his cell rather than walk to the cafeteria.

That same day the prison's medical director, Dr. Imhotep Carter, noted in the medical file that Petties in fact had suffered an "Achilles tendon rupture." Dr. Carter, an employee of Wexford Health Sources (and one of the defendant physicians) modified his colleague's treatment instructions by directing that Petties be scheduled for an MRI and examination by an orthopedist. He characterized these additional steps as "urgent."

Prison lockdowns during the following week resulted in cancelation of three appointments at the infirmary. By the time Petties was next seen, eight days had passed since his injury, and apparently he thought he could bear weight on his left foot. That was the understanding of the examining physician, who noted in the medical file that Petties "believes he can bear weight." Petties insists that, at the time, he was experiencing severe pain when he put weight on his left foot, but he does not dispute that the examining physician read the situation differently.

During the weeks after his injury, Petties continued to feel pain even when he used the crutches. He next was seen in the infirmary in February 2012, three-and-a-half weeks after his injury. Petties complained to an infirmary worker that his Achilles tendon was "killing" him and keeping him from climbing stairs because of the pain. The next day, on February 14, 2012, Dr. Carter examined him and noted that the Achilles tendon was shortened and swollen. He extended the prescription for Vicodin for six weeks, directed Petties to continue using crutches, reauthorized him to have a low bunk and "medical lay in" for two months, and told him to avoid stairs and the gym.

On March 6, 2012, Petties was taken offsite for the MRI ordered by Dr. Carter. That diagnostic confirmed a "complete Achilles tendon rupture." The next week Petties again was taken offsite for examination by Dr. Anuj Puppala, an orthopedist. He opined that the absence of "any sort of cast" to immobilize Petties's torn Achilles tendon was "contributing to his pain and likely contributing" to the 2 cm gap in the ruptured tendon. Dr. Puppala gave Petties an orthopedic boot that would function like a cast to immobilize his ankle. The doctor also recommended continued use of crutches and referred Petties to a foot and ankle specialist. A doctor at Stateville promptly approved use of the orthopedic boot for three months, and another infirmary physician increased the strength of the Vicodin dose prescribed for Petties.

Petties continued to be seen at the infirmary until his appointment with the foot and ankle specialist. A note in his medical file from April 4, 2012, says that Petties was wearing the boot but waiting on special support shoes. On April 10 he was wearing the boot and walking with a cane. In May a

doctor renewed his allowance for a low bunk, crutches, and orthopedic boot until August. The prison's medical staff also repeatedly renewed the Vicodin prescription—at the end of April, in May, and in June. Petties's permit for one crutch and the orthopedic boot was extended until December of that year.

Petties was examined by the foot and ankle specialist, Dr. Samuel Chmell, in July 2012. Dr. Chmell apparently had treated Petties before in 2010 when he ruptured the Achilles tendon in his right ankle. Dr. Chmell did not observe evidence of "tenderness with range of motion" but did see signs of decreased ankle strength. He recommended that Petties continue limiting his physical activity, undergo a second MRI to assess the progress of his healing, and receive physical therapy at least twice per week. In August 2012 another Wexford employee, Dr. Saleh Obaisi, replaced Dr. Carter as medical director at Stateville. Dr. Obaisi (the second of the defendant physicians) already had been working weekends at the prison, and had approved the MRI recommended by Dr. Chmell. That second MRI was performed in September 2012, and showed a partial Achilles tear.

A few weeks after Dr. Obaisi's promotion to medical director, he examined Petties. His notes from his August examination indicate that Petties had not been using his crutches and wanted to return them. During that examination Dr. Obaisi told Petties that physical therapy would not be ordered. The next month Petties was using one crutch when he was seen by a nurse at the infirmary. Near the end of September 2012, Dr. Obaisi noted that Petties had "not seen ortho yet" and prescribed Tylenol.

Petties next saw Dr. Obaisi in November 2012, about 10 months after his injury. The doctor observed that Petties still was experiencing pain and authorized continued assignment to a low bunk, soft-soled gym shoes, and another year's use of the orthopedic boot. From December 2012 to April 2013, other medical staff also tended to Petties on five occasions. On April 16, 2013, Petties visited the infirmary; he complained that he was not getting pain medication or the shoes ordered by Dr. Obaisi, but the practitioner who saw him noted that he *had* received pain medication and shoes from Dr. Obaisi the previous October. In June 2013 he was given additional pain medication. In his declaration submitted at summary judgment, Petties says that as of early 2014 he still was experiencing "serious pain, soreness, and stiffness" in his left ankle.

Petties filed this suit in November 2012, initially against Wexford as well as Drs. Carter and Obaisi. The district court recruited a lawyer, who later amended the complaint to drop Wexford and allege that only the two doctors were deliberately indifferent to Petties's torn Achilles tendon. Petties principally argued that Dr. Carter was deliberately indifferent to his torn Achilles tendon by failing to immobilize his ankle with a boot or cast immediately after the injury, and Dr. Obaisi acted with deliberate indifference to the injury when he did not order physical therapy despite Dr. Chmell's recommendation.

The district court granted the doctors' motion for summary judgment. Dr. Carter's decision to wait eight weeks before immobilizing Petties's ankle in a cast or boot could not have constituted deliberate indifference, the court reasoned, because Petties's several physicians in and out of

prison held different opinions about whether a boot or cast had been necessary. The court further concluded that a jury could not reasonably find that Dr. Obaisi's rejection of the recommendation for physical therapy had constituted deliberate indifference because, according to the judge, Petties had learned physical therapy exercises a year earlier (when he ruptured his right Achilles tendon) and could have performed those same exercises on his own.

## Analysis

On appeal Petties first argues that the district court wrongly attributed to a difference of medical opinion Dr. Carter's choice not to immediately immobilize his ankle despite Wexford's treatment protocol. Petties says that the delay between his injury and when his ankle was immobilized left him in "constant, severe pain" and worsened the tendon rupture. Prolonged and unnecessary pain resulting from a significant delay in effective medical treatment may support a claim of deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007). But disagreement with a doctor's medical judgment is not enough to prove deliberate indifference. *Berry*, 604 F.3d at 441; *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). Even admitted medical malpractice is not sufficient to show that a doctor acted with deliberate indifference. *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013); *Norfleet*, 439 F.3d at 397. Rather, the inmate must show that the doctor's treatment strayed so far from accepted professional standards that a jury could infer the doctor acted with deliberate indifference. *See McGee*, 721 F.3d at 481; *Roe v. Elyea*, 631 F.3d 843,

857 (7th Cir. 2011); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

We agree with the district court that, on this record, a jury could not reasonably conclude that Dr. Carter was deliberately indifferent by waiting to give Petties a splint or boot. Immediately after Petties's injury, a prison doctor exempted him from walking to meals and prescribed pain medication, an anti-inflammatory, and crutches. The walking exemption and prescriptions were renewed repeatedly. And that same day, Dr. Carter—who had treated about 10 ruptured Achilles tendons previously—ordered an urgent referral for an MRI and an appointment with an orthopedist. Although Dr. Carter acknowledged that treatment for a complete Achilles tear typically includes immobilizing the ankle to minimize putting weight on the ankle, he also explained that he did not employ a splint initially because he believed that giving Petties crutches and minimizing his time on his feet was an effective treatment plan. Additionally, Dr. Puppala, the orthopedist who examined Petties after his MRI in March 2012, testified that although *he* would almost always immobilize a patient's ankle in a cast or boot, a torn Achilles tendon "would probably heal" without one. This meaningful and ongoing treatment of Petties's injury at Stateville and with outside medical providers—which Dr. Carter oversaw—could not constitute deliberate indifference.

Petties next argues that Dr. Obaisi was deliberately indifferent when he declined to order physical therapy despite the ankle specialist's recommendation in July 2012 for weekly physical therapy. Doctors are entitled to deference in treatment decisions unless no minimally competent professional would have acted similarly. *See McGee*, 721 F.3d

at 481; *King v. Kramer*, 680 F.3d 1013, 1018–19 (7th Cir. 2012); *Roe*, 631 F.3d at 857. And although not following the advice of a specialist may constitute deliberate indifference, *see Gil v. Reed*, 381 F.3d 649, 663–64 (7th Cir. 2004); *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999), whether a doctor is deliberately indifferent depends on the totality of the inmate's care, *see Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999); *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997). Petties was treated immediately and continuously after he tore his Achilles tendon. He received crutches, regular pain medication, and later a boot to immobilize his left ankle, and was permitted to minimize time on his feet by eating his meals in his cell and not attending yard and gym time. Doctors at the prison (including Dr. Obaisi) repeatedly renewed those treatments after Dr. Obaisi took over as medical director. And Dr. Chmell, the specialist who had recommended physical therapy, testified that when he examined Petties in July 2012, the ankle had diminished strength but a full range of motion, and the tendon was partially healed, even without receiving any physical therapy before then. Petties's evidence does not show that Dr. Obaisi's treatment was so contrary to accepted professional standards that a jury could infer that it was not based on medical judgment. *See Duckworth*, 532 F.3d at 680; *Norfleet*, 439 F.3d at 396.

Accordingly, the judgment of the district court is AFFIRMED.

WILLIAMS, *Circuit Judge*, dissenting. "The Eighth Amendment safeguards the prisoner against a lack of medical care that may result in pain and suffering which no one suggests would serve any penological purpose." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). To succeed on an Eighth Amendment claim based on deficient medical care, a plaintiff must show that he suffered from an objectively serious medical condition and that each individual defendant was deliberately indifferent to that condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but the defendant disregards that risk." *Id.* It is intentional or reckless conduct, not mere negligence. *Id.* (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). There is no dispute that Petties's Achilles tendon rupture was objectively serious. So the only issue in this appeal is whether Petties has presented enough evidence from which a reasonable jury could conclude that Dr. Carter and Dr. Obaisi acted with deliberate indifference toward his serious injury. Viewing the facts in the light most favorable to Petties and drawing all reasonable inferences in his favor as we must, *Pagel v. TIN Inc.*, 695 F.3d 622, 624 (7th Cir. 2012), in my view, he has.

**A. Dr. Carter**

On this record a jury could reasonably conclude that Dr. Carter was deliberately indifferent by failing to immobilize Petties's ankle despite his employer's protocol for a ruptured Achilles tendon and his testimony that immobilization was the appropriate treatment. On January 19, 2012, the day of Petties's injury, Dr. Carter concluded that Petties suffered an

"Achilles tendon rupture." However, he did not immobilize
Petties's ankle with a splint (or by any other means), even
though Wexford's written protocols direct that treatment for
a ruptured Achilles tendon is "splint, crutches." Petties met
with other medical personnel in the following weeks,
including a meeting with Dr. Carter on February 14, but Dr.
Carter failed to immobilize his ankle then and Petties did not
receive any type of immobilization until March 15, nearly
two months after his injury. Evidence that a medical
provider failed to abide by an established treatment protocol
is evidence from which a jury could infer deliberate
indifference. *See Mata v. Saiz*, 427 F.3d 745, 757–58 (10th Cir.
2005) (reversing summary judgment where nurse's violation
of published health-care requirements was circumstantial
evidence that she knew of substantial risk of harm); *see also
Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 542–43 (6th Cir.
2008) (affirming denial of qualified immunity for paramedic
whose failure to follow established treatment protocols
could constitute deliberate indifference). Wexford's protocol
is explicit that a physician attending to a ruptured Achilles
tendon employ "splint, crutches, antibiotics if laceration"
and also make an "urgent" referral for further treatment. Dr.
Carter admitted having seen about ten ruptured Achilles
tendons previously, and he himself recognized and
diagnosed a "rupture" the same day that Petties was injured.
He ordered an urgent referral for an MRI and an
appointment with an orthopedist, yet during this lawsuit he
has never explained why he disregarded the directive to
"splint," or provide a splint for, Petties's ankle.

Failing to immobilize the ankle caused Petties to suffer
unnecessary pain during this eight-week period. Dr. Puppala
testified that making Petties walk on his left ankle without

any form of cast until March had added to his pain and likely widened the gap in his torn tendon. Furthermore, Petties himself testified that he was in extreme pain during those eight weeks. He said he felt "constant, severe pain" even when he used crutches and the pain was so bad he had difficulty sleeping. Two weeks after the injury, on January 27, at an appointment, Petties says that he could not bear weight on his left foot without severe pain.[1] On February 13, a provider who saw him in the clinic noted in Petties's chart that he had complained that his Achilles tendon was "killing" and he was unable to walk up stairs because of the pain. It is widely known that failing to immobilize an Achilles tendon rupture results in extreme pain and no one has put forward any medical justification for causing Petties this unnecessary additional pain. Petties has presented sufficient evidence to create a material issue of fact about whether Carter intentionally or with reckless disregard denied effective treatment. This deliberate indifference to Petties's prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim. *See Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039–40 (7th Cir. 2012). Prolonged and unnecessary pain resulting from a significant delay in effective treatment may support a claim of deliberate indifference. *Berry*, 604 F.3d at 441. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). We have said that the length

---

[1] A doctor wrote in his medical records that Petties "believes he can bear weight," but Petties says that that statement is false. At this stage, we must view the facts in the light most favorable to Petties and draw all reasonable inferences in his favor.

of the delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment. *Id.*; *see also Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007) (affirming denial of motion for judgment as a matter of law because "a reasonable jury could have concluded from the medical records that the delay unnecessarily prolonged and exacerbated [the plaintiff's] pain and unnecessarily prolonged" the plaintiff's serious health condition). Dr. Carter testified that he never recalled splints not being available at the prison. But he still failed to splint Petties's ankle at any point during those two months. The length of delay here is intolerable given the seriousness of Petties's injury and the ease of providing the immobilization at the prison. *See Arnett*, 658 F.3d at 753.

In my view, the majority wrongly finds that "a jury could not reasonably conclude that Dr. Carter was deliberately indifferent by waiting to give Petties a splint or boot." As I've discussed, there is ample evidence from which a reasonable jury could conclude Dr. Carter was deliberately indifferent.[2] In drawing its conclusion, the majority minimizes Dr. Carter's inaction in the face of protocol (and medical consensus that proper treatment of an Achilles tendon rupture includes immediate immobilization) on several grounds, though none are persuasive. For one, it follows the district court in seizing on a statement from Dr. Puppala's deposition that a torn Achilles tendon "would probably heal" without a boot. But Dr. Puppala testified that he would always immobilize a patient's ankle unless he

---

[2] Obviously, there is evidence from which a reasonable jury could conclude otherwise, but our task at this stage is just to determine whether a reasonable jury *could* rule in Petties's favor.

could not because of an open sore. And more importantly, Dr. Puppala never suggested that failing to immobilize a ruptured Achilles tendon would not needlessly cause heightened pain even if the tendon would "probably" still heal eventually. A delay in treatment need not aggravate an inmate's condition in order to be actionable; pain alone is sufficient to establish a valid Eighth Amendment claim. *See Smith*, 666 F.3d at 1039–40 ("[The plaintiff] contends that even if his condition did not worsen from the delay, deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim. This, too, is correct.").

Second, the majority mentions that Petties was exempted from walking to meals, and prescribed pain medication, an anti-inflammatory, and crutches, and that Dr. Carter ordered an urgent referral for an MRI and an appointment with an orthopedist. It finds that "[t]his meaningful and ongoing treatment" of Petties's injury could not constitute deliberate indifference. First, I note that the referral tells us nothing about whether Dr. Carter was deliberately indifferent to Petties's pain during the seven-week period before Petties was scheduled to receive that MRI. Immobilization was a simple step that Dr. Carter could have taken to ease Petties's pain during the interim. Also, Dr. Carter could have expedited the referral so that Petties would not have to wait seven weeks, but he did not.

More importantly, the "receipt of *some* medical care does not automatically defeat a claim of deliberate indifference." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). A prisoner is not required to show that a doctor completely ignored his pain, but instead a doctor's choice of the easier

and less efficacious treatment for an objectively serious medical condition can amount to deliberate indifference. *Berry*, 604 F.3d at 441. Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers "blatantly inappropriate" medical treatment. *Edwards*, 478 F.3d at 831. Although Petties received some medical attention, he is not required to show that he was "literally ignored" to prevail on his Eighth Amendment claim. *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000). This is because "[i]f all the Eighth Amendment required was that prison officials provide some 'immediate and ongoing attention,' they could shield themselves from liability (and save considerable resources) by shuttling sick or injured inmates to perfunctory medical appointments wherein no meaningful treatment is dispensed." *Perez v. Fenoglio*, No. 12-3084, 2015 WL 4092294 at *4 (7th Cir. July 7, 2015). But "the responsibilities imposed by the Constitution are not so easily avoided." *Id.* In many ways, this case is similar to *Berry* where we reversed summary judgment for the prison official defendants where a doctor and nurse gave an inmate pain medication and other directions for minimizing pain, but would not provide the more effective treatment, a referral to a dentist. Immobilization was needed to prevent Petties from experiencing severe pain whenever the ankle moved. The ineffective treatment provided here should not shield Dr. Carter from, at a minimum, facing a jury to determine whether he acted with deliberate indifference.

Third, the majority suggests that Dr. Carter's failure to immobilize Petties's ankle was somehow a difference of medical judgment, without using such words. It notes that Dr. Carter "did not employ a splint initially because he

believed that giving Petties crutches and minimizing his time on his feet was an effective treatment plan." But this testimony is at odds with Dr. Carter's own testimony that the appropriate treatment for a complete Achilles tear is to immobilize the ankle with a boot *and also* ensure that the patient was not putting weight on the ankle. A failure to exercise medical judgment when making a treatment decision violates the Eighth Amendment. *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011). Also, when a doctor's decision is so far from accepted professional judgment, practice, or standards that it demonstrates that his decision was not based on medical judgment, deliberate indifference may be inferred. *See McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013); *King v. Kramer*, 680 F.3d 1013, 1018–19 (7th Cir. 2012); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). A jury could conclude that the treatment provided here was blatantly inappropriate and so far afield from accepted professional judgment that it did not represent a medical decision at all.

Whether a prison official had the requisite knowledge of a substantial risk is a fact question that can be demonstrated by drawing an inference from circumstantial evidence. *Walker v. Peters*, 233 F.3d 494, 498 (7th Cir. 2000). "For example, a fact finder could conclude that the official was aware of the substantial risk from the very fact that the risk was obvious." *Id.* at 498–99 (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Where symptoms plainly call for a particular medical treatment (for example, the leg is broken, so it must be set), a doctor's deliberate decision not to furnish the treatment is actionable. *Id.* at 499. Here, a reasonable jury could conclude that Petties's symptoms plainly called for a particular medical treatment. That is

because every doctor that testified in this case has agreed that a ruptured Achilles tendon should be immobilized. Wexford's own protocol called for immobilization. And crutches do not prevent the ankle from moving, which causes pain.

Dr. Carter's testimony that he did not employ a splint initially because he believed that giving Petties crutches and minimizing his time on his feet was an effective treatment plan conflicts with his own testimony that treatment for an Achilles rupture typically includes immobilizing the ankle and Dr. Puppala's and Dr. Chmell's testimony that they would always immobilize (absent circumstances that are not present here). A reasonable jury could conclude that Dr. Carter's statement that he believed crutches was an effective treatment plan was a post hoc rationalization, not a statement that Dr. Carter exercised medical judgment at the time he treated Petties, to not provide a splint or boot. And Dr. Carter did not recall whether he referenced Wexford's treatment guidelines at the time he treated Petties. By giving no explanation at all for not following the protocol, Dr. Carter has opened himself up to a jury finding that he deliberately failed to treat Petties in such a way that he would likely aggravate Petties's injury.

### B. Dr. Obaisi

I believe that construing the record in the light most favorable to Petties, a jury could find that Dr. Obaisi was deliberately indifferent when he refused to order physical therapy despite the ankle specialist's recommendation that Petties receive physical therapy two to three times a week. Failure to follow the advice of a specialist or treating physician may constitute deliberate indifference. *See Gil v.*

*Reed*, 381 F.3d 649, 663–64 (7th Cir. 2004) (allegation that prison doctor prescribed medication to inmate that specialist warned against gave rise to genuine issue of material fact precluding summary judgment, even though the doctor had an explanation for his alternate course of action); *Jones v. Simek*, 193 F.3d 485, 491 (7th Cir. 1999) (fact that doctor denied inmate medical care for a period of time and thereafter refused to provide specific treatments that were order for the inmate was sufficient to survive motion for summary judgment). Dr. Obaisi has never said in this litigation that he disagreed with Dr. Chmell's recommendation. Rather, at his deposition, he first asserted that authorizing physical therapy would have been unnecessary because Petties could do "the same exercises" he learned when he tore his right Achilles tendon a couple years earlier. Yet, when pressed, Dr. Obaisi was forced to admit that he did not even know if Petties had received physical therapy for his previous injury. Worse, he could not recall instructing Petties to perform physical therapy exercise appropriate for a torn Achilles tendon and the medical file does not reflect that such a discussion took place. Failing, without medical justification, to follow Dr. Chmell's recommendation, despite the availability of a physical therapist at the prison, could constitute deliberate indifference. *See Gil*, 381 F.3d at 663.

The majority does not attempt to justify Dr. Obaisi's decision not to provide physical therapy for Petties (presumably because it is obvious that there is no justification). Instead, it focuses on the totality of Petties's care and concludes that Dr. Obaisi's "treatment" was not so contrary to accepted professional standards that a jury could infer that it was not based on medical judgment. First, much

of the "care" the majority cites occurred before Dr. Obaisi
became the medical director, so it is unclear how these acts
could be considered part of Dr. Obaisi's "treatment." Also, as
mentioned, an inmate does not need to show that he was
literally ignored. If the treatment provided was perfunctory
and less efficacious, then a decision to provide such
treatment can still constitute deliberate indifference. *Berry*,
604 F.3d at 441. Our totality of the inmate's care analysis
shows that where an inmate complains of a few isolated
incidents of delay or neglect during a course of treatment,
but the record as a whole shows that the defendant did not
disregard a serious medical risk because he provided
meaningful treatment throughout the inmate's recovery, then
the defendant has not acted with deliberate indifference. *See
Walker*, 233 F.3d at 501; *Dunigan ex rel. Nyman v. Winnebago
Cnty.*, 165 F.3d 587, 591 (7th Cir. 1999); *Gutierrez v. Peters*, 111
F.3d 1364, 1375 (7th Cir. 1997). That is not the case here.
Permitting Petties to use a lower bunk and avoid walking
around the prison cannot excuse a failure to provide actual
medical treatment for the injury. In July 2012—over two
years after Petties's injury—Petties's tendon had only
partially healed and he had diminished strength. In
November 2012, Dr. Obaisi noted in Petties's medical file that
he was in chronic pain from the injury. These are not signs of
a reasonable provision of total care. His injury should likely
have been completely healed much sooner and he should
not have been in pain nearly three years afterwards.

I think it is worth examining Dr. Obaisi's testimony just
to see how readily a reasonable jury could infer that Dr.
Obaisi was deliberately indifferent to Petties's injury. When
determining whether a doctor's treatment plan is
appropriate, the court must focus on what the doctor knew

at the time of treatment. *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). Deliberate indifference can be inferred from a physician's treatment decision which is so far afield from accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Dr. Obaisi knew Petties had a serious ankle injury and that a specialist had recommended physical therapy. At first, Dr. Obaisi claimed that he did not think physical therapy was necessary because Petties's could perform exercises on his own, but Dr. Obaisi had no apparent knowledge of Petties's prior ankle injury or any information regarding prior physical therapy. Therefore, when making the decision not to follow Dr. Chmell's recommendation, Dr. Obaisi was not basing it on a belief that Petties could perform physical therapy exercises on his own. It was not a medical judgment at all. This suspicious testimony could be used to infer deliberate indifference. Then, seeking another justification since his reliance on prior physical therapy was lacking foundation, Dr. Obaisi claimed that he believed walking was physical therapy for a ruptured Achilles tendon. This claim is absurd. It is also not consistent with the medical judgment of the specialist, Dr. Chmell, and Dr. Obaisi testified that he would always defer to the decisions of specialists (yet inexplicably chose not to in Petties's case):

> Counsel: As far as the care and treatment that should be rendered to an Achilles tendon injury you would defer to an orthopedic surgeon?
> Dr. Obaisi: Always.
> Counsel: And as far as the care and treatment that was suggested or ordered from orthopedic surgeons in this case specifically, you would defer to them?

      Dr. Obaisi: Yes.

Common sense dictates that walking on a ruptured Achilles tendon is not the equivalent of twice- or thrice-weekly physical therapy. It falls into this category of treatment decisions so far afield from accepted professional standards that deliberate indifference can be inferred. Failing to exercise medical judgment when making a treatment decision violates the Eighth Amendment. *Roe*, 631 F.3d at 863. Dr. Obaisi's decision to not provide Petties with physical therapy was a failure to exercise medical judgment. And the totality of Petties's care cannot excuse this neglect because the totality itself evinced deliberate indifference.

    I would remand this case for further proceedings on Petties's claims that Dr. Carter was deliberately indifferent by failing to immobilize Petties's ankle and that Dr. Obaisi was deliberately indifferent by not following Dr. Chmell's recommendation for physical therapy. For these reasons, I dissent.