**Brian JONES, Plaintiff–Appellant,**

v.

**Kul B. SOOD, et al., Defendants–Appellees.**

No. 02–4388.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 15, 2005.*

Decided Feb. 16, 2005.

---

\* After examining the briefs and record, we conclude that oral argument is unnecessary. Accordingly, this appeal is submitted on the briefs and record. *See* Fed. R.App. P. 34(a)(2).

Before POSNER, COFFEY, and WOOD, Circuit Judges.

### ORDER

Inmate Brian Jones claims in this suit under 42 U.S.C. § 1983 that as relevant here, five different doctors, all prison employees, were deliberately indifferent to his hemorrhoid condition. The district court granted summary judgment for the defendants, reasoning that the undisputed evidence belies any claim of deliberate indifference. Jones appeals, essentially arguing that his suit should have proceeded to trial because the defendants did not prove they provided "comprehensive treat-ment to end all pain and discomfort." We affirm.

We set forth the evidence at summary judgment in the light most favorable to Jones. *See Gil v. Reed*, 381 F.3d 649, 651, 658 (7th Cir.2004). Jones complains of events beginning in 1998 when he was housed at the Joliet Correctional Center. During the year Jones was there, two of the defendants examined or treated him 68 times for his hemorrhoid condition. Dr. Lping Zhang, then a staff physician, examined Jones when he first arrived at Joliet in August 1998; she prescribed medications and promptly referred Jones to an outside specialist, Dr. R.K. Natesha. In October 1998, Dr. Natesha performed an elective hemorrhoidectomy with approval from Dr. Kul Sood, the prison's medical director. Dr. Natesha prescribed medications for Jones's post-operative care, which Dr. Zhang monitored after Jones was returned from the hospital to prison. Over the next six months, Jones was seen approximately 25 times by Dr. Zhang or Dr. Sood, who continued to prescribe medications and send Jones to Dr. Natesha.

Jones was transferred to Stateville Correctional Center in October 1999, and over a period of 715 days he visited medical professionals 413 times. Those visits included 86 with in-house doctors or outside surgeons, and another 327 by prison nurses or medical technicians. During this period Jones also underwent surgery three more times.

At Stateville, Jones's medical care was overseen by two more defendants, staff physician Andrew Tilden and medical director Joseph Smith. Dr. Tilden first saw Jones on October 16, 1999, shortly after he arrived from Joliet. Dr. Tilden prescribed various medications and continued the ongoing consultations with Dr. Natesha, who discovered an abscess and fistula on November 17 and recommended excision of the fistula. Before resorting to a second

surgery, Dr. Smith opted to pursue an aggressive week-long treatment in the infirmary during which he prescribed various analgesics and evaluated Jones several times. Despite the apparent success of this aggressive alternative treatment, Dr. Smith requested another examination by Dr. Natesha, who once again recommended a fistulectomy that she ultimately performed on December 20. During the two weeks Jones recovered in the prison infirmary, he received 52 visits by a nurse or medical technician and 8 physician examinations.

Jones next visited Dr. Tilden on February 18, 2000, with complaints about his condition. Dr. Tilden prescribed medications and referred Jones back to Dr. Natesha, who examined Jones on February 23 and noted that his surgical wounds were healing well. On March 28, Jones returned to Dr. Tilden complaining of rectal pain. Tilden noted a small hemorrhoid and prescribed various medications. The following week Dr. Natesha evaluated Jones and recommended further surgery to remove the fistula. That surgery was scheduled for April 24, but Jones refused to go to the hospital. On May 19, Dr. Tilden examined Jones again, noted a healed scar, and recommended Jones continue his present treatment.

A week later Jones was examined by staff physician Evaristo Aguinaldo—the fifth defendant—and on May 31 Dr. Natesha diagnosed a cyst abscess and recurrent cyst and once again ordered surgery. The operation was performed the very next day, June 1. While Jones recovered in the prison infirmary, he was treated with medications and received 73 visits by a nurse or medical technician and 15 physician examinations.

Dr. Natesha again examined Jones on July 5 and July 12, and recommended sitz baths and dressing changes while Jones continued to recover from his June sur-

gery. Dr. Smith concluded on July 13 that Jones's surgical wound had almost healed, an opinion shared by Dr. Natesha when she followed up on August 9. By then Jones already had filed this lawsuit.

On September 6, 2000, Dr. Natesha re-examined Jones again and discovered a new cyst abscess requiring excision. Jones requested a second opinion before agreeing to a fourth surgery, and in accordance with his request he was referred to Dr. Nelson, a specialist at the University of Illinois–Chicago Medical Center. Dr. Nelson examined Jones in November 2000 and, after a follow-up visit on January 22, 2001, recommended another surgery, which was performed on February 1. Jones again recovered in the prison infirmary and from February 3 through March 26 was seen by medical personnel more than 100 times, including 18 times by doctors. This fourth surgery is the last incident mentioned in Jones's amended complaint, which was filed by counsel enlisted by the district court to assist him.

We review a grant of summary judgment *de novo*. *Foelker v. Outagamie County*, 394 F.3d 510, 513 (7th Cir.2005). Jones could prevail on an Eighth Amendment claim for deliberate indifference to his medical needs only by producing evidence that the defendants knew of and deliberately or recklessly disregarded a serious medical condition. *See Jackson v. Ill. Medi–Car, Inc.*, 300 F.3d 760, 765 (7th Cir.2002); *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir.2002). Neither a difference of opinion as to the best course of medical treatment nor conduct that in other circumstances might amount to medical malpractice constitutes deliberate indifference. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir.2003); *Walker*, 293 F.3d at 1037. And of course the Eighth Amendment "does not guarantee success." *McGill v. Duckworth*, 944 F.2d 344, 350 (7th Cir.1991).

Contrary to Jones's contention that the defendants caused him to "suffer lingering pain" and discomfort, the evidence presented at summary judgment does not hint at deliberate indifference. Jones benefitted from frequent medical treatment (he was seen nearly 500 times over the course of three years). His physicians responded to his complaints, pursued several different courses of treatment for his hemorrhoids, promptly and repeatedly referred him to outside specialists, authorized four surgeries, and provided significant aftercare. They prescribed antibiotics, pain medications, sitz baths, anti-inflammatories, ointments, and laxatives. There is no evidence that he suffered from any denial of medication, improper care, or delay in treatment.

Jones seems to argue that the defendants should be liable because he suffered pain in spite of—and in his view, because of—the extensive care he received. But the medical expert Jones retained during this litigation conceded that the treatment provided by the defendants was appropriate, and suggested only that more investigative procedures could have been undertaken. However a doctor's failure to explore treatments of the inmate's choosing, or even a careless failure to investigate alternatives, does not constitute deliberate indifference. *See, e.g., Walker v. Peters*, 233 F.3d 494, 499 (7th Cir.2000).

AFFIRMED.