In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-4162

RESHARD JACKSON,

*Plaintiff-Appellant,*

v.

ILLINOIS MEDI-CAR, INCORPORATED
and MATTHEW HOWARD,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 538—**David H. Coar**, *Judge.*

ARGUED JUNE 3, 2002—DECIDED AUGUST 7, 2002

Before BAUER, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* At the direction of the Chicago
Police Department ("CPD"), Illinois Medi-Car ("Medi-Car"),
a private corporation, transported Reshard Jackson to a
South Side police station on October 5, 1998. After reaching
the facility, Mr. Jackson collapsed from an overdose of
medication. Mr. Jackson later filed this § 1983 action against
Medi-Car and one of its drivers, Matthew Howard. He
alleged that Medi-Car and Mr. Howard had denied him, a
pretrial detainee, adequate medical care in violation of
the Fourteenth Amendment of the Constitution of the

United States. Medi-Car and Mr. Howard moved for summary judgment, submitting, among other arguments, that no deprivation of constitutional rights had occurred. The district court agreed and entered summary judgment in their favor. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

Medi-Car is a private corporation that provides non-medical transportation for disabled individuals. Its role is limited to providing transportation services; Medi-Car does not provide medical care to any of its passengers. Indeed, its drivers do not receive, nor are they required to obtain, any medical training. Rather, if a passenger develops a serious medical problem, Medi-Car instructs its drivers to contact an emergency medical care provider.

During 1995, the corporation entered into a one-year contract with the City of Chicago ("the City") to transport wheelchair-bound detainees for the CPD. Although the parties did not renew the contract upon its expiration, they continued to operate under its terms over the following years, including 1998. With the contract, the City also provided Medi-Car with CPD DSO 9506 ("the DSO")—a document establishing the procedures under which the parties would operate. Under the DSO, if an arrestee required medical assistance, CPD officers would not contact Medi-Car; rather, they would obtain medical assistance for the detainee from the Chicago Fire Department. Moreover, Medi-Car drivers, including Mr. Howard, had no authority over a detainee; they simply moved the individual

from prearranged location to prearranged location. Consequently, the DSO required a CPD officer to accompany the detainee in the Medi-Car van to ensure the driver's safety, to prevent escape and to monitor the suspect. Notably, Medi-Car did not give any special instructions to its drivers concerning the transport of detainees. Rather, the corporation employed the same procedures whether transporting a detainee or non-detainee passenger.

On October 5, 1998, CPD officers arrested Mr. Jackson, who is confined to a wheelchair, at an apartment in Chicago. The arrest became confrontational; one of the officers not only choked Mr. Jackson but also destroyed the charging unit on the wheelchair. Mr. Jackson then was handcuffed to the front of the wheelchair and was pulled down the steps of the apartment building. Upon reaching ground level, the officers removed their detainee's restraints. While the officers talked amongst themselves, Mr. Jackson consumed roughly 114 pills of Baclofen, a prescription muscle relaxant.

Approximately fifteen to twenty minutes later, a Medi-Car vehicle driven by Mr. Howard arrived at the apartment building. While moving Mr. Jackson into the vehicle, one of the officers noticed an empty pill bottle on the ground, prompting her to ask her detainee whether he had consumed any pills. Mr. Jackson responded that he had taken the entire bottle and asked that he be taken to a hospital.[1] The officers declined Mr. Jackson's request, placed him in the Medi-Car vehicle and informed him that he would receive medical attention at the county jail. When placed in the vehicle, Mr. Jackson not only was

---

[1] The officers and Mr. Howard deny that Mr. Jackson requested medical assistance.

speaking in full sentences, but also was sitting upright with his eyes open. According to Mr. Jackson, Mr. Howard was present while these events transpired.

The officers instructed Mr. Howard to take Mr. Jackson to a police station located at 71st Street and Cottage Grove on the South Side of Chicago.[2] Although an officer did not ride with Mr. Jackson, the CPD provided a police escort for the vehicle, placing a squad car in front of and behind the Medi-Car van. During the ten to fifteen minute ride to the police station, Mr. Jackson, who was upset, again asked to be taken to a physician. Mr. Howard, however, declined to do so, indicating that the CPD had instructed him to deliver Mr. Jackson to the police station.[3] Mr. Jackson also indicated that he wished his mother to know that he was sorry. Throughout the ride, Mr. Howard could observe his passenger; Mr. Jackson was sitting upright and was breathing regularly. Indeed, Mr. Jackson did not indicate that he was in pain nor did Mr. Howard perceive him to be in distress.

Upon arriving at the police station, Mr. Howard removed Mr. Jackson from the Medi-Car vehicle and placed him in an interrogation room. Once again, Mr. Jackson appeared to be alert and attentive. However, after spending five minutes in an interrogation room, Mr. Jackson became unconscious. The CPD called an ambulance, and Mr. Jackson was taken to the hospital where he lapsed into a three-day period of unconsciousness. Almost two weeks

---

[2] At some point before loading Mr. Jackson into the vehicle, the officers again placed him in handcuffs. The parties agree that Mr. Howard was not given the keys to these restraints.

[3] Mr. Howard contends that, during the ride, he and his passenger never conversed.

later, the hospital released Mr. Jackson after he sufficiently had recovered from an overdose of Baclofen.

## B. District Court Proceedings

Soon after, Mr. Jackson initiated this § 1983 action against, among others, Medi-Car and its employee, Mr. Howard.[4] According to Mr. Jackson, Medi-Car and Mr. Howard functioned as state actors who had deprived him, a pretrial detainee, of medical care in violation of the Constitution of the United States.

Prior to trial, Medi-Car and Mr. Howard moved for summary judgment. Among other arguments, they submitted that no constitutional deprivation had occurred while transporting Mr. Jackson from the apartment complex to the police station at 71st Street and Cottage Grove. After considering the parties' submissions, the district court entered summary judgment for Medi-Car and Mr. Howard. The district court concluded that, even if Medi-Car and Mr. Howard had functioned as state actors, they had not deprived Mr. Jackson, a pretrial detainee, of his due process right to medical care. Although noting that Mr. Jackson had produced sufficient evidence indicative of a serious medical condition, the district court determined that the claim failed on an alternate ground. In particular, according to the district court, the evidence simply would not support the conclusion that Mr. Howard acted with deliberate indifference with respect to Mr. Jackson's medical condition. Absent evidence of a constitutional violation,

---

[4] The complaint also named as defendants the City and the CPD officers involved in the October 5, 1998 altercation. However, the City, the officers and Mr. Jackson reached a settlement, and these parties were dismissed with prejudice from the case.

the district court concluded that the claim against Medi-Car also failed.

## II

## DISCUSSION

### A.

We review de novo the district court's grant of summary judgment. *See Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132, 1136 (7th Cir. 2001). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Our function is not to weigh the evidence but merely to determine if "there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In performing this task, we must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255.

### B.

Mr. Jackson submits that, based on the record before us, a reasonable jury could conclude that Mr. Howard and Medi-Car deprived him of adequate medical care in violation of the Due Process Clause of the Fourteenth Amendment. In particular, Mr. Jackson states that "Mr. Howard deliberately ignored the risk to [his passenger's] life by refusing [the passenger's] request to be taken to the hospital." Appellant's Br. at 17. After reviewing the record, we cannot accept this contention.

It is well-established that, while in the custody of state or local authorities, a pretrial detainee must be afforded certain protections under the Fourteenth Amendment, including access to adequate medical care.[5] *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Payne v. Churchich*, 161 F.3d 1030, 1040-41 (7th Cir. 1998). On numerous occasions, we have stated that these due process rights are at least as great as the protections afforded a convicted prisoner under the Eighth Amendment. *See Higgins v. Correctional Med. Servs. of Ill., Inc.*, 178 F.3d 508, 511 (7th Cir. 1999); *Payne*, 161 F.3d at 1040; *Estate of Cole v. Fromm*, 94 F.3d 254, 259 n.1 (7th Cir. 1996). Consequently, when considering a pretrial detainee's claim of inadequate medical care, we frequently turn to the analogous standards of Eighth Amendment jurisprudence. *See Higgins*, 178 F.3d at 511; *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999).

Given this analogy, for a pretrial detainee to establish a deprivation of his due process right to adequate medical care, he must demonstrate that a government official acted with deliberate indifference to his objectively serious medical needs. *See Qian*, 168 F.3d at 955. This inquiry includes an objective and subjective component. The objective aspect of the inquiry concerns the pretrial detainee's medical condition; it must be an injury that is, "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted); *see also Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 2000). "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious

---

[5] For the purpose of this appeal, we shall assume without deciding that Mr. Howard and Medi-Car functioned as state actors.

that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).

Even if the plaintiff satisfies this objective component, he also must tender sufficient evidence to meet the subjective prong of this inquiry. In particular, the plaintiff must establish that the relevant official had "a sufficiently culpable state of mind[,] . . . deliberate indifference to [the detainee's] health or safety." *Farmer*, 511 U.S. at 834. Evidence that the official acted negligently is insufficient to prove deliberate indifference. *See Payne*, 161 F.3d at 1040. Rather, as we have noted, " 'deliberate indifference' is simply a synonym for intentional or reckless conduct, and that 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Qian*, 168 F.3d at 955. Consequently, to establish deliberate indifference, the plaintiff must proffer evidence "demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger." *Payne*, 161 F.3d at 1041. Simply put, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Higgins*, 178 F.3d at 510. Even if he recognizes the substantial risk, an official is free from liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 843.

In this case, although Mr. Jackson has demonstrated that he suffered from an objectively serious medical condition, we certainly cannot conclude on this record that Mr. Howard acted with deliberate indifference to the situation. Mr. Howard's role in this incident was markedly different from that of the police officers on the scene. As

the parties agree, Mr. Howard, as a Medi-Car driver, had no authority over the CPD's detainees, including Mr. Jackson. *See* R.71, ¶ 35 (Defendants' 12(M) Statement); R.76, ¶ 35 (Plaintiff's Local Rule 56.1(b)(3)(A) Statement). Mr. Howard could neither release Mr. Jackson nor remove the passenger's restraints. This aspect of the relationship between Medi-Car and the CPD is the very reason that the DSO required an officer to ride in the Medi-Car vehicle with a detainee. Moreover, the terms of the DSO indicate that the CPD did not expect Medi-Car or its drivers to provide medical services to a detainee. Indeed, the company did not afford medical services to any of its passengers. It was not Mr. Howard's role to assess the detainee's medical condition; that duty was assigned to the arresting officers. On these facts, Mr. Howard's role in this matter was quite limited; he merely functioned as a transport service, moving Mr. Jackson from destination to destination.

Even assuming that Mr. Howard may have had some obligation to relay information concerning a drastic change in Mr. Jackson's medical condition to the officers flanking the Medi-Car van, the facts of this case do not indicate that he was confronted with such a situation. Moreover, he certainly did not act with anything close to deliberate indifference in declining to take his passenger to the hospital. As detailed above, primary authority over Mr. Jackson rested with the CPD officers, individuals who concluded that, even though their detainee had consumed numerous pills, he should be taken to the police station, not the hospital. These officers also decided that, despite their responsibility for Mr. Jackson's medical safety and despite the departmental directive, one of their number did not have to ride in the van along with Mr. Jackson. Upon being placed in the Medi-Car van, Mr. Jackson was alert, sitting up straight and speaking in full

sentences. Although he was upset during the transportation to the police station, his physical appearance provided no indication that he was in or nearing medical distress. Indeed, at no point during the ten to fifteen minute ride to the station did Mr. Jackson indicate that he was in pain. Mr. Jackson's condition simply had not deteriorated since his custodians, the CPD officers, had last determined that he should be taken to the police station. Lacking medical training and any realistic control over the detainee, Mr. Howard certainly did not act with deliberate indifference to a known medical need when he followed the directions of the officers. Simply put, under these circumstances, Mr. Howard's decision to defer to the orders of the CPD, who had authority over his passenger, and to proceed to the police station simply did not deprive Mr. Jackson of the protection of the Due Process Clause. The district court correctly entered summary judgment in favor of Mr. Howard.

Finally, we briefly turn to Mr. Jackson's claim against Medi-Car. It is well-established that there is no respondeat superior liability under § 1983. *See Horwitz v. Bd. of Educ.*, 260 F.3d 602, 619 (7th Cir. 2001). A "private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). In general terms, to maintain a viable § 1983 action against a municipality or similar entity,[6] a plaintiff must demonstrate that a constitutional deprivation occurred as the result of an express policy or custom of the government unit. *See*

---

[6] For purposes of § 1983, we have treated a private corporation acting under color of state law as though it were a municipal entity. *See Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982).

*Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001). In this case, we have concluded that Mr. Jackson has failed to prove the existence of a constitutional violation. That determination, as Mr. Jackson acknowledges in his brief,[7] precludes a determination that Medi-Car caused a constitutional injury to him. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Accordingly, the district court correctly entered summary judgment in favor of Medi-Car.

### Conclusion

The district court properly entered summary judgment on Mr. Jackson's claims against Mr. Howard and Medi-Car. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[7] *See* Appellant's Br. at 17-18.