# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-1430

RICHARD FOELKER,

*Plaintiff-Appellant,*

v.

OUTAGAMIE COUNTY et al.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00-C-1464—**William C. Griesbach**, *Judge.*

———————

ARGUED NOVEMBER 2, 2004—DECIDED JANUARY 7, 2005

———————

Before POSNER, MANION, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* After 2 days in the Outagamie County jail, according to a social worker there, Richard Foelker was "confused and disoriented" and, despite having defecated in his cell and on himself, he was "unaware of the mess that he created." Although his condition, which resulted from his forced withdrawal from methadone, continued to deteriorate, he was not taken to the hospital for 2 more days. That delay, along with Foelker's inability to obtain methadone while he was incarcerated, forms the basis of this appeal from the dismissal of his suit alleging a violation of his constitutional rights.

Foelker turned himself in at the jail on April 27, 2000, to begin serving a sentence in connection with a conviction for operating a motor vehicle under the influence of an intoxicant. At the time, Foelker was on a methadone maintenance treatment program designed to wean people off of their narcotic addition. The program was administered by Valley Health Services, a clinic in the town of Menasha in Outagamie County. He had been on the program for about 5 weeks when he self-reported at the jail, but he had not taken his daily dose of methadone when he arrived. He says he didn't take his dose because he was ill in the morning and the clinic closed at noon.

Soon after Foelker's arrival at the jail, Paul Mintzlaff, a registered nurse, examined him. Foelker told Mintzlaff that he needed to receive a dose of methadone to avoid going into withdrawal. The next morning, Marcia Allain, the jail's nursing coordinator, evaluated Foelker and told him that he would not receive methadone during his incarceration because he had been off the drug for 3 days. Still, Allain called Valley Health Services because it worked with the jail and provided methadone for other inmates. Allain was told that Foelker should receive a reduced dose of methadone. It is neither clear nor particularly relevant at this point why the methadone never made it to the jail; it is only important that Foelker did not receive any methadone that day or, for that matter, at any time while he was there.

At 1:15 p.m. on Foelker's third day in a holding cell, Brian Schertz, another registered nurse, checked on Foelker, then reported to Sergeant John Behrent that Foelker could be moved to a cell with the general population if necessary. An hour later, Sergeant Behrent told Schertz that Foelker had defecated on himself and on the floor of the holding cell and that the stench was "unbearable." Although Schertz says he thought Foelker was "playing the system" and not in need of medical attention, he arranged for Diane Mandler, supervisor of the Outagamie County Crisis Program and the Case Management Program of Outagamie County, to eval-

uate Foelker. Mandler, a social worker, examined Foelker at 4:15 p.m. and found that he was confused, disoriented, and hearing voices, and that, although he knew that he had not taken methadone for several days, he was unaware that he had defecated on himself and on the floor of his cell. Mandler recommended that Foelker be observed but did not push for immediate medical attention.

Neither Schertz nor Mandler saw Foelker the next day. Foelker remained in his cell despite again defecating on the floor. The following morning, Mintzlaff found Foelker to be "disoriented." Foelker thought he was at "the wedding hotel" waiting to be married and was hallucinating about another person in his cell. Mintzlaff left a message with Mandler and called the jail's doctor, who recommended that Mintzlaff give Foelker thiamine, a drug used for alcohol withdrawal, which he did. Mintzlaff returned 2 hours later and found Foelker in the same condition. An hour after that, Mintzlaff sent Foelker to the hospital. Foelker eventually was diagnosed with acute delirium, secondary to drug withdrawal. Foelker spent 4 days in the hospital before being transferred back to the Outagamie County jail.

Foelker sued under 42 U.S.C. § 1983, claiming that those responsible for caring for him violated his Eighth and Fourteenth Amendment rights by denying him methadone and, as his condition worsened, by failing to provide him adequate medical care. After the complaints against several defendants were dismissed, the district court granted a motion for summary judgment in favor of the remaining defendants. Foelker appeals only his Eighth Amendment claims against Schertz and Mandler and his derivative statutory indemnification claim against Outagamie County, the outcome of which depends on the outcome of Foelker's claims against the County employees, *see* Wis. Stat. § 895.46 (2002).

To prevail, Foelker must show deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A 'serious' medical need is one that has been

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997)). We review the district court's grant of summary judgment *de novo. See, e.g.*, *Mateu-Anderegg v. School Dist. of Whitefish Bay*, 304 F.3d 618, 623 (7th Cir. 2002).

Although the district court found otherwise, defendants argue that Foelker failed to present evidence of a serious medical need because he could not show that he was in "pain or extreme distress." We side with the district court. That Foelker was not in extreme distress does not necessarily mean that he did not have a serious medical need. Here, as it turns out, the opposite is true. The fact that Foelker was not distressed despite believing he was at the "wedding hotel" and defecating on the floor of his cell and on himself is strong evidence of a severe medical need. Defendants also argue that Foelker must not have had a serious medical need because both Schertz and Mandler examined him and did not send him to the hospital. But that doesn't mean Foelker didn't have a serious medical need, only that defendants took no action to treat him, which is exactly what Foelker claims was the problem.

The question, then, is whether, as they now suggest, Schertz and Mandler were merely negligent in their assessment of Foelker's condition or whether they were deliberately indifferent to his medical needs. *See Jackson*, 300 F.3d at 765 ("Evidence that the official acted negligently is insufficient to prove deliberate indifference."). " '[D]eliberate indifference' is simply a synonym for intentional or reckless conduct, and . . . 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999).

Schertz and Mandler argue—and the district court agreed—that Foelker failed to present evidence showing

that the defendants knew how serious Foelker's condition was. While it is true that Foelker has not presented evidence of, say, statements by Schertz and Mandler proving that they knew the severity of Foelker's condition, direct evidence is not always necessary to state a claim. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (allowing proof of deliberate indifference by "inference from circumstantial evidence"). Undisputed evidence shows that Schertz checked on Foelker the night of April 28 and again around 1:15 p.m. the next day. He did not seek further medical attention for Foelker, even though Foelker had defecated on the floor of his cell and on himself. Although Schertz might have honestly believed, as he claims, that Foelker "was playing the system," a reasonable jury could consider that Schertz knew that Foelker had not taken his methadone and was exhibiting signs of withdrawal and thus conclude that Schertz knew there was something seriously wrong with Foelker. It could thus conclude that Schertz recklessly or maliciously allowed the situation to fester.

Similarly, after examining Foelker a few hours after Schertz on April 29, Mandler found Foelker to be "confused and disoriented" and "unaware" that he had defecated in his cell. Although Mandler knew that Foelker might have been suffering from methadone withdrawal, she recommended only that he continue to be monitored. Again, she might not have understood the severity of the situation and might have negligently believed that Foelker did not need additional medical attention. But drawing all inferences in Foelker's favor, as we must at this stage, a reasonable jury could also conclude that she intentionally allowed Foelker to suffer from the effects of his withdrawal. We, of course, cannot predict how a jury would view this situation. The facts, as we have presented them, put the best light on Foelker's view of the case. A contrary view might actually present a truer picture of the situation. At this stage of the litigation, we think the case should not have been short-

circuited on summary judgment. Therefore, we REVERSE the judgment and REMAND the case for further proceedings.

MANION, *Circuit Judge*, dissenting. I agree with the district court and this court that for summary judgment purposes Richard Foelker established that he had a serious medical need. However, contrary to the court's opinion, the district court correctly held that the evidence and its reasonable inferences, when construed in favor of Foelker, do not amount to deliberate indifference on the part of Brian Schertz or Diane Mandler. At most, the evidence shows that Schertz and Mandler were negligent in dealing with Foelker's serious medical need. Therefore, I respectfully dissent.

To be deliberately indifferent, Schertz and Mandler must have "had a sufficiently culpable state of mind." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) (internal quotation omitted). Under this subjective standard, Foelker "must proffer evidence demonstrating that [Schertz and Mandler] were aware of a substantial risk of serious injury to [Foelker] but nevertheless failed to take appropriate steps to protect him from a known danger." *Id.* (internal quotation omitted).

The evidence, viewed in favor of Foelker, merely shows that Schertz and Mandler should have done more to recognize, understand, and alleviate his deteriorating condition: Schertz and Mandler should have been more mindful of Foelker's risk of serious withdrawal; Schertz should have done more to obtain methadone; he should have done more to obtain information from Foelker's methadone provider; he should have understood Foelker's defecating on himself

and the floor as an indication of a serious medical need and responded to it better; and Mandler erred in recommending additional monitoring of Foelker at the jail rather than hospitalization. Yet none of this amounts to deliberate indifference.

Schertz and Mandler did not ignore Foelker's needs. They afforded him medical monitoring and treatment. Based on his nursing notes made at 1:15 p.m. on Saturday, April 29, 2000, Schertz clearly is not being deliberately indifferent.

> "Inmate Rechecked in holding cell. V/S taken B/P 148/78, AP 78 & regular, Resp - 24. Continues [with] mild tremors but ambulates with a steady gait. He is selectively oriented to person, place & time. Skin is warm/dry. Color is pink. Has No physical complaints & appears in No distress. Plan is to continue to keep inmate in monitored holding cell for close observation. S/Sgt. Behrent was advised inmate may be placed in general population if the holding cell is needed by someone else. Encouraged inmate to push fluids."

An hour later Behrent informed Schertz that Foelker had defecated on himself and the floor. Given the very recent medical examination, it would not be unreasonable for Schertz to speculate that Foelker was "gaming the system." Nevertheless, rather than deliberately ignoring Foelker's needs, he arranged for Mandler to examine him.

Mandler, a social worker from the County Department of Social Services, went to the jail to evaluate Foelker. Her training was in social work, not medicine. Perhaps when he told her that he was off his methadone for several days and that he did not recall defecating on himself and the floor, she should have alerted the officials that he needed immediate attention. Instead, she determined that he was not experiencing acute distress and simply needed continued observation. That conclusion may have been negligent, but it was not deliberate indifference amounting to cruel and unusual punishment.

On Sunday, April 30, 2000, Schertz was not on duty. Mandler was on call, but no one called. In hindsight, both should have done more. But "not every instance of poor medical treatment amounts to a federal constitutional violation." *Steele v. Choi*, 82 F.3d 175, 176 (7th Cir. 1996). Moreover, while circumstantial evidence can be enough to survive summary judgment, the circumstantial evidence here shows, at most, that Schertz and Mandler were negligent in failing to recognize how serious Foelker's needs were or negligent in failing to do enough to address those needs.[1]

A reasonable jury cannot translate such evidence of misjudgment or negligence into deliberate indifference. It would require much speculation to conclude that Schertz and Mandler had a culpable state of mind, i.e., that they intentionally or recklessly withheld treatment so as to inflict punishment. It is well established, however, that "[i]nferences . . . supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). Future plaintiffs should not be able to survive summary judgment by merely establishing a serious medical need and then claiming that a defendant's failure to do more to recognize or treat that need amounted to deliberate indifference.

---

[1] In this regard, Foelker's case is analogous to numerous other deliberate-indifference cases that we have precluded from going to trial. *See*, *e.g.*, *Matos v. O'Sullivan*, 335 F.3d 553, 557-58 (7th Cir. 2003); *Chapman v. Keltner*, 241 F.3d 842, 846 (7th Cir. 2001); *Walker v. Peters*, 233 F.3d 494, 500-01 (7th Cir. 2000); *Zentmyer v. Kendall County*, 220 F.3d 805, 811-12 (7th Cir. 2000); *Higgins v. Corr. Med. Servs. of Ill., Inc.*, 178 F.3d 508, 511-13 (7th Cir. 1999) ("An error in judgment does not imply a deliberate act."); *Qian v. Kautz*, 168 F.3d 949, 956 (7th Cir. 1999); *Collignon v. Milwaukee County*, 163 F.3d 982, 989-91 (7th Cir. 1998); *Gutierrez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997); *Cole v. Fromm*, 94 F.3d 254, 261-63 (7th Cir. 1996); *Steele*, 82 F.3d at 178-79.

Although Foelker suffered some personal indignities and some serious medical problems due to the unnecessary withdrawal from his drug addiction, there is not sufficient evidence for a reasonable jury to conclude that Schertz and Mandler were deliberately indifferent to Foelker's medical needs. Therefore, for these and the reasons set out in the district court's opinion, I respectfully dissent.

A true Copy:

     Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*