Jimmy ALVARADO, Guillermo Rosado, Domingo Lopez, Kyle Heady, Andrew Susa, Todd Fraiser, and John Flavin, Plaintiffs,

v.

WESTCHESTER COUNTY, Correct Care Solutions LLC., New York Correct Care Solutions Medical Services P.C., Sergeant Coletti, Assistant Warden Diaz, Deputy Commissioner Wanda Smithson, and Westchester County Executive Robert P. Astorino, all defendant(s) individually and in their official capacities, Defendants.

No. 13 CV 2515 (VB).

United States District Court, S.D. New York.

Signed April 24, 2014.

Jimmy Alvarado, Valhalla, NY, pro se.

Guillermo Rosado, Yonkers, NY, pro se.

Domingo Lopez, Malone, NY, pro se.

Kyle Heady, Valhalla, NY, pro se.

Andrew Susa, Valhalla, NY, pro se.

Todd Fraiser, Valhalla, NY, pro se.

John Flavin, Valhalla, NY, pro se.

John Martin Murtagh, Jr., Gaines, Novick, Ponzini, Cossu & Venditti, LLP, White Plains, NY, for Defendants.

## MEMORANDUM DECISION

BRICCETTI, District Judge:

Plaintiffs Jimmy Alvarado, Guillermo Rosado, Domingo Lopez, Kyle Heady, Andrew Susa, Todd Fraiser, and John Flavin, proceeding *pro se,* bring this Section 1983 prisoner civil rights action alleging defendants violated their constitutional rights.

Now pending is defendants' motion to dismiss.[1] (Doc. # 22). For the following reasons, the motion is GRANTED in part and DENIED in part.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

For purposes of ruling on this motion, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in favor of plaintiffs.

Plaintiffs are present and former inmates who were incarcerated at Westchester County Jail ("WCJ") between June 2012 and February 2013. Before being taken into custody, each was addicted to heroin. Defendants Correct Care Solutions, LLC, and New York Correct Care Solutions Medical Services, P.C. (collectively, the "Correct Care Defendants"), provide on-site medical services at WCJ pursuant to a contract with Westchester County (the "County").

Upon arrival at WCJ, plaintiffs informed its "intake medical staff" they were regular heroin users who had begun to experience withdrawal symptoms. Plaintiff Susa, for example, told medical personnel he used five to ten bags of heroin daily, and "displayed needle marks on his arms as verification of drug abuse." And plaintiffs Flavin, Rosado, and Lopez informed medical staff they had been "participating in a Methadone Clinic" before their incarceration.

Among other symptoms, plaintiffs reported "vomiting yellow stomach bile," "[n]ausea," "fatigue," "dia[rrh]ea," "insomnia," "loss of appetite," "anxiety," "shakes," and "aching bones." Flavin reported he had "suffered a seizure" while in police custody. Plaintiffs requested treatment with methadone[2] or Suboxone,[3] but their requests were uniformly denied. Although plaintiffs allege they were forced to

---

**1.** This motion was filed by defendants Westchester County, Deputy Commissioner Wanda Smithson, Assistant Warden Diaz, and Westchester County Executive Robert P. Astorino. Defendants Correct Care Solutions, LLC, and New York Correct Care Solutions Medical Services P.C. have filed an answer. (Doc. # 26). On May 3, 2013, the Court dismissed all claims against Sergeant Coletti for failure to state a claim. (Doc. # 12).

**2.** "Methadone is an addictive drug used in the treatment of heroin addicts. If taken without controls it can, like heroin, create euphoric 'highs,' but if properly administered it eliminates the addict's craving for heroin without providing a 'high.' " *United States v. Moore,* 423 U.S. 122, 125, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975).

**3.** "Suboxone is often prescribed to assist an individual in overcoming drug addiction." *United States v. $107,840.00 in U.S. Currency,* 784 F.Supp.2d 1109, 1113 n. 2 (S.D.Iowa 2011). "Suboxone is a combination of buprenorphine and naloxone. Buprenorphine is an opioid medication ... similar to ... morphine, codeine, and heroin however, it produces less euphoric ('high') effects and therefore may be easier to stop taking." *Sylvester v. Comm'r of Soc. Sec.,* 2011 WL 470257, at *3 n. 5 (W.D.Pa. Feb. 4, 2011) (internal quotation marks omitted).

withdraw from heroin "cold turkey," most claim they were given over-the-counter analgesics (such as Tylenol or Advil) and antacids (such as Tums or Maalox).[4] However, plaintiffs allege, these medications were "not effective" in controlling their symptoms.

On June 25, 2012, Flavin wrote to Diaz and Smithson complaining of "withdraw[a]ll sy[mp]toms." Flavin stated he "notified intake staff" he used heroin and was "in a methadone program prior to [his] arrest," but complained "[C]orrect [C]are [S]olutions is not issuing no inmates methadone that were using heroin." Plaintiffs allege Smithson denied the grievance in writing on June 27, 2012.[5] Elsewhere, however, plaintiffs claim Diaz and Smithson refused to accept the grievance.

Flavin also mailed a copy of his grievance to Astorino and Westchester County Attorney Robert F. Meehan, but plaintiffs allege the County "did not respond."

Plaintiffs subsequently brought this Section 1983 action, alleging (i) defendants' refusal to accept Flavin's grievance deprived them of their First Amendment right to petition the government for redress, (ii) defendants' deliberate indifference to their serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments,[6] and (iii) the County was deliberately indifferent to the risk the Correct Care Defendants were providing constitutionally inadequate medical care at WCJ, or acquiesced in the provision of such treatment.[7]

Defendants now move to dismiss, arguing plaintiffs (i) cannot base a constitutional claim on defendants' alleged violation of a prison grievance procedure, (ii) have failed to allege the personal involvement of individual defendants Diaz, Smithson, and Astorino in the alleged constitutional violations, and (iii) fail to plead a claim against the County under *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

## DISCUSSION

### I. *Legal Standard*

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib.*

4. In addition to these over-the-counter medications, Flavin received "a small dose of LIBRIUM as a[n] alternative to Methadone." "Librium is administered to address the anxiety and agitation associated with alcohol withdrawal." *Adilovic v. Cnty. of Westchester*, 2011 WL 2893101, at *3 n. 9 (S.D.N.Y. July 14, 2011). Susa, by contrast, claims he was given no medication whatsoever.

5. Although the complaint alleges Flavin "received a reply to his Grievance" on "June 27, 2013," the document itself is dated June 27, 2012.

6. Although it is unclear from the complaint if plaintiffs were pretrial detainees (whose deliberate indifference claims arise under the Fourteenth Amendment) or convicted prisoners (whose claims arise under the Eighth

Amendment), the same deliberate indifference analysis applies in either case. *See Williams v. Dep't of Corr.*, 2011 WL 3962596, at *3 (S.D.N.Y. Sept. 7, 2011) (noting that "a pretrial detainee's claim of deliberate indifference is analyzed under the same test as an Eighth Amendment claim for deliberate indifference").

7. The complaint also makes reference to an unspecified "equal protection" violation, but pleads no facts from which the Court could infer such a violation, even under the liberal pleading standard applicable here. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case, ... threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

*v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (internal quotation marks omitted). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" announced by the Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Id.* at 678, 129 S.Ct. 1937; *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir.2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Ashcroft v. Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility." *Id.* at 678, 129 S.Ct. 1937; *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 564, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

▇ Because plaintiffs are proceeding *pro se,* the Court must construe their submissions liberally and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (per curiam) (internal quotation marks omitted). Applying the pleading rules permissively is particularly appropriate when, as here, *pro se* plaintiffs allege civil rights violations. *See Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008). "Even in a *pro se* case, however ... threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (internal quotation marks omitted). Nor may the Court "invent factual allegations" plaintiffs have not pleaded. *Id.*

## II. *Claims Against the Individual Defendants in Their Official Capacities*

In *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the Supreme Court identified two kinds of suits in which government officials are named as defendants. "The first kind, official-capacity suits, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ortiz v. Court Officers of Westchester Cnty.,* 1996 WL 531877, at *4 (S.D.N.Y. Sept. 19, 1996) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)) [8]. "The second kind, personal-capacity suits, seek to impose individual liability for actions taken by a government officer under color of state law." *Id.*

"Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." *Castanza v. Town of Brookhaven,* 700 F.Supp.2d 277, 284 (E.D.N.Y. 2010) (quoting *Escobar v. City of New*

---

**8.** Plaintiffs will be provided with copies of all unpublished opinions cited in this ruling. *See*

*Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir. 2009).

*York*, 2007 WL 1827414, at *3 (E.D.N.Y. June 25, 2007)).

■ Here, plaintiffs' claims against Diaz, Smithson, and Astorino in their official capacities are duplicative of their claims against the County and are accordingly dismissed. *See Hafer v. Melo*, 502 U.S. at 25, 112 S.Ct. 358 (noting "the real party in interest in an official-capacity suit is the governmental entity and not the named official").

III. *Claims Against the Individual Defendants in their Individual Capacities*

A. *Alleged Violations of Prison Grievance Procedure*

Plaintiffs allege Diaz, Smithson, and Astorino, in their individual capacities, deprived plaintiffs of their First Amendment right to petition the government for redress by ignoring or otherwise mishandling their grievances.

■ Notwithstanding the First Amendment's guarantee of the right to petition the government for redress, "inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures [do] not give rise to a cognizable [Section] 1983 claim." *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369–70 (W.D.N.Y.2005); *see also Mimms v. Carr*, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("The First Amendment is not implicated ... where prison officials deny an inmate access to grievance procedures.").

■ Here, as plaintiffs' only allegation involving Diaz is that he ignored or re-

fused to accept their grievance, plaintiffs fail to state a claim against Diaz.[9]

To the extent plaintiffs allege Smithson, too, ignored Flavin's grievance—and to the extent Astorino may fairly be considered a "prison official"—plaintiffs' First Amendment claim likewise fails. Indeed, any claim that plaintiffs were deprived of their right to petition the government for redress is belied by the fact of their bringing this lawsuit. *See Harris v. Westchester Cnty. Dep't of Corr.*, 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008) ("[I]n the event that prison officials ignore a grievance that raises constitutional claims, the proper avenue to seek relief is the course taken by plaintiff[s] here: directly petitioning the government for redress of [their] claims.").

Accordingly, plaintiffs' First Amendment claims are dismissed.

B. *Personal Involvement of Defendants Diaz, Smithson, and Astorino*

■ "To state a claim for damages under Section 1983, the plaintiff must allege sufficient facts to demonstrate that defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" *Harris v. Westchester Cnty. Dep't of Corr.*, 2008 WL 953616, at *9 (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir.2001)); *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (noting the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983" (internal quotation marks omitted)).

---

9. The Court has already dismissed plaintiffs' claims against Coletti on the same ground. (*See* Doc. # 12).

In this Circuit, the personal involvement of a supervisor may be established by showing:

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d at 873.

Liberally construed, plaintiffs' complaint proceeds under the second or fifth of these theories, or both.

However, because Section 1983 liability cannot be predicated on a theory of *respondeat superior, see City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), "[t]he bare fact that [a defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a] claim." *Colon v. Coughlin,* 58 F.3d at 874. Thus, as a matter of law, a defendant's mere "receipt of a letter or grievance, without personally investigating or acting [thereon], is insufficient to establish personal involvement." *Burns v. Fischer,* 2014 WL 1413387, at *5 (W.D.N.Y. Feb. 3, 2014); *see also Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997) ("[A]llegations that an official ignored a prisoner's letter are insufficient to establish liability."). "Personal involvement will be found, however, where a supervisory official receives *and acts on* a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint."

*Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002) (emphasis added); *see also Johnson v. Bendheim,* 2001 WL 799569, at *6 (S.D.N.Y. July 13, 2001) (denying motion to dismiss as to prison official who received prisoners' grievances and denied them).

"Personal involvement is a question of fact and must be satisfied as to each individual defendant." *Cabassa v. Oshier,* 2013 WL 1183296, at *8 (N.D.N.Y. Mar. 21, 2013).

Here, Diaz and Astorino's mere receipt of Flavin's grievance, and their subsequent inaction, are insufficient to establish the personal involvement of these defendants. *See Harris v. Westchester Cnty. Dep't of Corr.,* 2008 WL 953616, at *9. Nor can plaintiffs premise Section 1983 liability on these defendants' "high position in the New York prison hierarchy." *Colon v. Coughlin,* 58 F.3d at 874.

In contrast, by alleging Smithson received Flavin's grievance *and denied it in writing*—and by attaching the purported written denial to the complaint—plaintiffs have plausibly alleged Smithson's personal involvement here. *See Harris v. Westchester Cnty. Dep't of Corr.,* 2008 WL 953616, at *10 (denying motion to dismiss as to prison supervisor who received *and acted upon* plaintiff's grievances).

Importantly, however, as defendants' "preliminary investigation indicates that the purported written denial attached to the complaint may, in fact, be a forgery," (Doc. # 24, at 1 n. 2), plaintiffs are cautioned that their case may rest upon a shaky foundation. Should discovery reveal plaintiffs knowingly submitted a fake government document to bolster their claims, such conduct would constitute a fraud upon the Court and will result in the dismissal of this case with prejudice. *See,*

*e.g., Hargrove v. Riley,* 2007 WL 389003, at \*11 (E.D.N.Y. Jan. 31, 2007) (dismissing with prejudice *pro se* prisoner's Section 1983 case as a sanction for plaintiff's having submitted falsified grievance forms).

Accordingly, plaintiffs' claims against Diaz and Astorino in their individual capacities are dismissed. Plaintiffs' claims against Smithson individually—for the time being—may proceed.

### IV. *Monell Claim Against the County*

Liberally construed, the complaint alleges the County was deliberately indifferent to the risk the Correct Care Defendants were providing constitutionally inadequate medical care, and violating County policy, by refusing to dispense methadone or Suboxone at WCJ.

To state a *Monell* claim based on municipal deliberate indifference, plaintiffs must allege (i) the commission of constitutional violations by the Correct Care Defendants, and (ii) the County's (a) disregard of the risk the Correct Care Defendants were providing constitutionally inadequate medical care at WCJ, or (b) acquiescence in the provision of such treatment.

### A. *The Correct Care Defendants*

Plaintiffs allege the Correct Care Defendants' refusal to dispense methadone or Suboxone violated County policy and evinced deliberate indifference to their serious medical needs.

In support, plaintiffs attach several documents to the complaint. The first of these, labeled "Exhibit (1)," appears to be a series of excerpts from a report issued by the Civil Rights Division of the United States Department of Justice (the "DOJ") to Westchester County Executive Andrew J. Spano on November 19, 2009. Although the report identifies "medical care deficiencies" of constitutional proportion at WCJ, it nevertheless "commend[s]" the jail

for its "Methadone treatment program." Compl. (Doc. # 8–1, at 9).

Also attached to the complaint is an excerpt of the "Westchester County Department of Correction Inmate Health Care Contract" which requires its on-site medical contractor (the Correct Care Defendants) "to obtain and maintain a license to dispense methadone and Suboxone from the DEA" as part of a "plan to handle inmates requiring detoxification." Compl. (Doc. # 8–2, at 7).

The complaint and its attachments thus plausibly allege the existence of a County policy to provide for methadone- or Suboxone-based detoxification at WCJ. *See* Fed. R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Even so, "*Monell* does not create a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy. If a plaintiff fails to plausibly allege that municipal employees violated his or her constitutional rights, the plaintiff's *Monell* claim necessarily fails as well as against the municipal entity." *Nash v. Kressman,* 2013 WL 6197087, at \*12 (S.D.N.Y. Nov. 27, 2013) (citation and internal quotation marks omitted).

Accordingly, the Court must first determine whether plaintiffs plausibly allege the Correct Care Defendants' failure to comply with the County's policy evinced deliberate indifference to plaintiffs' serious medical needs.

To state a deliberate indifference claim arising out of prison conditions, an inmate must allege that (1) objectively, the condition was a "sufficiently serious" violation of the inmate's constitutional rights; and (2) subjectively, the defendant had a

state of mind of "deliberate indifference" to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

■ An inmate's condition is "sufficiently serious" only if "his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir.2005) (internal quotation marks omitted); *accord Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (finding only "deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation" (internal quotation marks omitted)).

■ Although the Second Circuit has not directly addressed this question, some courts have concluded that the failure to provide methadone to an inmate exhibiting symptoms of withdrawal may constitute deliberate indifference to a serious medical need by "intentionally allow[ing] [the inmate] to suffer from the effects of his withdrawal." *Foelker v. Outagamie Cnty.*, 394 F.3d 510, 513 (7th Cir.2005); *see also Messina v. Mazzeo*, 854 F.Supp. 116, 140 (E.D.N.Y.1994) (pretrial detainee, whose participation in methadone program was interrupted by arrest, stated deliberate indifference claim against prison doctor who refused to continue methadone treatment).

Here, plaintiffs plausibly allege the Correct Care Defendants' deliberate indifference.

After learning Heady was using heroin, WCJ medical personnel allegedly told him—apparently contrary to fact—"let's get one thing clear[:] we do not have a Methadone program here at [WCJ] so don't ask." Heady was given ibuprofen and sent back to his housing unit. Throughout the week, Heady allegedly continued to seek "medical attention" at "sick call," complaining he was suffering from "insomnia" and could not eat, but was consistently denied treatment with methadone or Suboxone.

WCJ medical personnel allegedly told Susa he "would not receive any medication for withdraw[a]l sy[m]ptoms" and denied him treatment of any kind, forcing him to withdraw from heroin "cold turkey."

And after medical personnel allegedly ignored Fraiser's complaints that the over-the-counter medications he had been given were "not effective," Fraiser alleges he could neither eat without vomiting nor sleep through the night for approximately two-and-one-half months.

These allegations, among others, plausibly allege the Correct Care Defendants' deliberate indifference to plaintiffs' serious medical needs. *See Messina v. Mazzeo*, 854 F.Supp. at 140 (pretrial detainee pleaded deliberate indifference of prison doctor who told him "I don't care what you do. You can stand on your head, tear the place apart, you're not getting methadone").

Moreover, plaintiffs' allegations they were uniformly denied methadone or Suboxone over the course of nine months when it was apparent their treatment with over-the-counter medications was "not effective"—together with Heady's allegation he was falsely informed WCJ "[did] not have a Methadone program" at all—plausibly allege such deliberate indifference was so widespread as to amount to a pattern of misconduct by the Correct Care Defendants.

## B. *The County*

The next question is whether the County was deliberately indifferent to the risk the Correct Care Defendants were providing constitutionally inadequate medical care at

WCJ, or acquiesced in the provision of such treatment.

■ A municipality such as the County may be held liable under Section 1983 only "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.,* 436 U.S. at 694, 98 S.Ct. 2018. Thus, "[a] municipal policymaking official's 'deliberate indifference' to the unconstitutional actions, *or risk of unconstitutional actions,* of municipal employees can in certain circumstances satisfy the test for a municipal custom, policy, or usage that is actionable under Section 1983." *Jones v. Town of E. Haven,* 691 F.3d 72, 81 (2d Cir.2012) (emphasis added). For example, "[w]here a [Section] 1983 plaintiff can establish that the facts available to [County] policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied." *Cash v. Cnty. of Erie,* 654 F.3d 324, 334 (2d Cir.2011) (quoting *City of Canton v. Harris,* 489 U.S. 378, 396, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (O'Connor, J., concurring in part and dissenting in part)); *see also Reynolds v. Giuliani,* 506 F.3d 183, 192 (2d Cir.2007) ("*Monell's* policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.").

■ Here, plaintiffs plausibly allege the County's deliberate indifference to the risk the Correct Care Defendants were providing constitutionally inadequate medical care at WCJ, or its acquiescence in the provision of such treatment.

By letter, Flavin informed Smithson, Astorino, and Meehan—and by extension, the County—that "[C]orrect [C]are [S]olutions is not issuing no inmates methadone that were using heroin." Flavin claimed he and other inmates were experiencing "withdraw[a]l sy[mp]toms" such as "vomiting," "shakes," and "seizures" even *after* receiving medical treatment, adding: "this facility needs to implement a system where Inmates who were using prior to arrest are properly treated and detoxed from heroin."

Flavin's letter came less than three years after the DOJ's report, which identified "areas where the medical care provided at WCJ falls below ... constitutionally required standards."

In light of the 2009 DOJ report, the County's alleged inaction upon learning the state of the jail's detoxification program plausibly suggests its deliberate indifference to the risk the Correct Care Defendants were providing constitutionally inadequate medical care or its acquiescence in the provision of such care.

Because the complaint plausibly alleges plaintiffs' injuries are fairly traceable to the *County's* deliberate conduct, plaintiffs have stated a *Monell* claim against the County. *See Brown v. Coughlin,* 758 F.Supp. 876, 883 (S.D.N.Y.1991) (denying summary judgment when plaintiff's evidence supported municipality's knowledge of and acquiescence in "a pattern of behavior by prison and hospital officials which left an incarcerated man to suffer the pain of osteomyelitis without giving heed to his cries for help").

## CONCLUSION

Defendants' motion to dismiss is GRANTED as to (i) all claims against defendants Diaz, Smithson, and Astorino in their official capacities, and (ii) all claims

against Diaz and Astorino in their individual capacities.

Defendants' motion to dismiss is DENIED as to (i) plaintiffs' *Monell* claim against Westchester County, and (ii) plaintiffs' Section 1983 claim against Smithson in her individual capacity.

The Clerk is instructed to terminate defendants Diaz and Astorino.

The Clerk is instructed to terminate the motion. (Doc. # 22).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.