**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 29, 2021[*]
Decided June 30, 2021

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 19-3316

| | |
|---|---|
| ANTONIO SUSTAITA, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 16-4269-CSB |
| | |
| ALLEN HENDERSON, et al., | Colin S. Bruce, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Antonio Sustaita, an Illinois inmate, appeals the entry of summary judgment in favor of medical staff and officers at his prison who he claims deliberately ignored his serious medical needs for eleven months. The district court correctly ruled that, based on undisputed facts, Sustaita's doctor provided constitutionally adequate care and that the rest of the defendants were not personally responsible for that care, so we affirm.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Sustaita injured his left bicep three times; the first time occurred in September 2014 while he played soccer at Hill Correctional Center. Dr. Kul B. Sood ordered an X-ray and determined that Sustaita had torn a tendon near his bicep. The doctor prescribed pain relievers, a bandage wrap, and a 30-day low-bunk permit in Sustaita's regular cell. In Dr. Sood's medical judgment, rest and time were sufficient to heal the injury, and within two months, Sustaita confirmed that he no longer had pain in his bicep. The eleven-month period that Sustaita addresses in this suit began after this successful treatment. We recount the facts of what followed in the light most favorable to Sustaita. *See Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018).

In December 2014, Sustaita reinjured his bicep when he fell in a segregation unit. (He also believes that he fractured his collar bone in the fall, but he admits that no medical record reflects a fracture.) The same day, a nurse learned about the fall; she determined that Sustaita's injury was not an emergency and gave him pain medicine until Dr. Sood could see him. Dr. Sood evaluated Sustaita five days later. Similar to the treatment after the first injury, he prescribed pain relievers, a 60-day low-bunk permit, and a bandage wrap. For security reasons (presumably to avert self-harm), Sustaita was not permitted to receive the wrap during his final nine days in segregation. Sustaita asserts that, during the next eleventh months, he complained to prison officers and medical personnel about his bicep and collar bone. But his medical records reflect no further complaints about his bicep and none at all about his collar bone.

After this eleven-month period, Sustaita was transferred to Stateville Correctional Center in Illinois, where he injured his bicep for a third time in another fall. This time, when Sustaita returned to Hill about a month later, Dr. Sood referred him to an orthopedic specialist for extra treatment. The specialist administered a steroid shot and prescribed an anti-inflammatory drug. After Sustaita's bicep did not improve, the specialist wrote that Sustaita "suffered a long head of the bicep rupture 1 year ago" that "cannot be addressed."

This suit came next. Sustaita alleged first that Dr. Sood ignored his medical needs between his second bicep injury and his transfer to Stateville. In entering summary judgment in favor of the defendants, the district court ruled that, based on the undisputed evidence, Dr. Sood used proper professional judgment in deciding to follow the same conservative treatment that had successfully treated Sustaita's first bicep injury. As for other prison staff whom Sustaita sued, the court ruled that they were not personally involved and had no authority to override Dr. Sood. Sustaita moved the court to reconsider under Federal Rule of Civil Procedure 59, but the court denied relief.

On appeal, Sustaita again first targets the treatment of his second bicep injury following his fall in December 2014. To begin, he argues that he received no care until he saw Dr. Sood five days after the second injury. The record refutes his claim. He does not dispute that a nurse saw him the day of his fall, assessed his injury, and gave him pain medication. This prompt attention complied with the Eighth Amendment. *See Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir 2015).

Sustaita next contends that Dr. Sood violated the Eighth Amendment when, after he prescribed a bandage wrap, he did not ensure that Sustaita received it immediately. But Dr. Sood was constrained by the security protocol that kept bandages out of segregation. Because he did not devise that protocol, and Sustaita does not contend that it was a sham, Dr. Sood did not deliberately ignore Sustaita's need for the wrap. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Next Sustaita argues that he had a collar bone injury that Dr. Sood ignored, but the record contains no evidence that his collar bone required serious medical attention. "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention." *Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512 (7th Cir. 2005) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997)). Sustaita admits that no medical professional diagnosed him with a collar bone injury, despite numerous medical exams after his fall, and no medical document reveals one. Sustaita responds that his own sworn testimony about a fracture should suffice. But Sustaita concedes that he does not have any medical training; accordingly, his lay assertion cannot create a triable question about a serious medical need.

Sustaita has one last challenge about Dr. Sood's treatment. He argues that Dr. Sood recklessly declined to refer him to a specialist after his second bicep injury. He observes that Dr. Sood referred him to a specialist after his third bicep injury, and, he surmises, if Dr. Sood had referred him to this specialist after his second injury, the specialist could have prevented long-term damage to his bicep.

A jury could not find that Dr. Sood's decision declining to refer Sustaita to a specialist after the second injury violated the Eighth Amendment. That decision was constitutionally sound unless "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008). But as the district court observed, because Dr. Sood's decision to follow conservative treatment worked well after the first injury, he reasonably applied it to the second injury. We recognize that, after the *third* injury, Dr. Sood referred Sustaita to a

specialist. But no medical evidence suggests a specialist was needed to treat the *second* injury. Sustaita disagrees, arguing that the specialist critiqued Dr. Sood's earlier treatment, both orally and in writing. But Sustaita submitted no admissible evidence of an oral criticism. *See Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016). Rather, he proffered an unsworn prison grievance in which he alleged that the specialist critiqued Dr. Sood. The specialist is not a defendant, so Sustaita's assertion about what the specialist purportedly said is inadmissible hearsay. *See id.* As for a written critique, Sustaita points to the specialist's comment in Sustaita's medical record that his longstanding bicep rupture "cannot be addressed." But that comment does not refer to Dr. Sood, let alone critique his work, so it cannot alter summary judgment.

Finally, to the extent that Sustaita reprises his claim that the other defendants were deliberately indifferent to his medical needs, his argument fails. First, Dr. Sood was already treating Sustaita properly, and prisoners do not have the right to dictate different medical treatment from others. *See Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Second, as the district court noted, the record showed that none of the other defendants had authority to override Dr. Sood's treatment plan. A failure to go beyond the duties of one's job to treat a prisoner already receiving medical attention does not violate the Eighth Amendment. *See Burks*, 555 F.3d at 595.

AFFIRMED